FRANKE, APPELLEE, *v.* THIRD
NATIONAL BANK & TRUST COMPANY,
APPELLANT.

(No. CA 9454 — Decided April 3, 1986.)

*Sambol & Assoc.* and *Marylee Gill Sambol,* for appellee.
*Turner, Granzow & Hollenkamp* and *Kathryn A. Lamme,* for appellant.

WOLFF, J. The Third National Bank & Trust Company appeals from a summary judgment granted by the Montgomery County Court of Common Pleas in favor of Dora Franke.

Dora Franke and her son Michael Franke were joint owners of a certificate of deposit in the face amount of $12,000, purchased in April 1982, at the Third National Bank. The certificate of deposit was purchased with proceeds of life insurance on Dora Franke's deceased husband, of which she was the sole beneficiary.

The certificate of deposit contained the following language:

"JOINT DEPOSITORS

"If there is more than one Depositor named on the face of the Certificate, then Depositors are considered Joint Depositors. They will be considered joint tenants with right of survivorship. All Depositors will be considered to have equal and undivided ownership of the Certificate. Therefore, the deposit or any accrued interest may be withdrawn by any one or more of the Joint Depositors.

"Upon the death on any Depositor, the ownership of the Certificate is exclusively that of the surviving Joint Depositors. The next of kin, heirs or assigns of the deceased Joint Depositor will have no ownership interest of the Certificate."

On November 22, 1982, Michael Franke, then twenty-three years old, applied to the bank for a loan in the amount of $7,000, offering the certificate of deposit as collateral. Michael executed and delivered to the bank his promissory note in the amount of $7,000 and listed the certificate of deposit as security in the consumer loan note. Although not clearly established by the evidence, it appears to be undisputed that Michael also delivered to the bank the certificate of deposit which remained in the bank's possession. At the same time, Michael also executed and delivered to the bank a withdrawal slip which referred to the certificate of deposit and "7000." Dora Franke was not involved in this transaction.

On June 27, 1983, Michael died. The loan which Michael had obtained in November 1982 went into default. On September 23, 1983, the bank executed on its claimed security interest in the certificate of deposit, paid off the remaining balance of the loan, and remitted the balance of the principal and interest from the certificate of deposit to counsel for Dora Franke.

Dora Franke filed a complaint in the common pleas court against the bank, alleging that the bank had wrongfully withheld from her part of the certificate of deposit represented by the remaining balance of the loan. She sought judgment in the amount of those funds together with interest, punitive damages, and attorney fees.

Dora Franke and the bank filed cross-motions for summary judgment. The trial court sustained the motion of Dora Franke and overruled the bank's motion.

Dora Franke was given judgment in an amount equal to the remaining balance of the loan together with interest. Her claims for punitive damages and attorney fees were dismissed.

Briefly, the trial court held that the bank's right of setoff was subordinate to Dora Franke's right of survivorship and that the bank's security interest was extinguished upon the death of Michael.

The Third National Bank asserts two assignments of error which are as follows:

"I. The lower court erred in granting summary judgment to plaintiff and denying summary judgment to defendant by its holding that a properly perfected security interest in a certificate of deposit is extinguished upon the death of the debtor joint owner.

"II. The lower court erred in granting plaintiff's motion for summary judgment and denying defendant's motion for summary judgment by misapplying contract language regarding ownership of the subject certificate of deposit."

The question raised by these assignments of error, which we treat together, is whether the bank's security interest in the certificate of deposit was extinguished by Michael's death.

Initially, we note that security interests in certificates of deposit are governed by R.C. 1309.01 et seq. See R.C. 1309.04(K) and 1309.01(A)(5).

Secondly, we believe this appeal can be determined without reference to whether the bank had a perfected security interest in the certificate of deposit.[1]

Turning to the central issue raised by the bank's assignments of error, we believe that the trial court correctly determined that the bank's security interest in the certificate of deposit was extinguished upon the death of Michael.

The language of the certificate of deposit, although clearly authorizing Michael to withdraw the principal and interest during his lifetime, just as clearly limited Michael's ownership interest and power to withdraw to his lifetime, and vested complete ownership in Dora Franke upon his death.

While Michael could give a security interest to the bank in collateral in which

---

[1] The bank claims the certificate of deposit was an "instrument" as defined in R.C. 1309.01(A)(9): " 'Instrument' means a negotiable instrument as defined in section 1303.03 of the Revised Code, or a security as defined in section 1308.01 of the Revised Code, or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment." As such, the bank claims the security interest was perfected by the bank's taking possession of the certificate of deposit. R.C. 1309.24. The certificate of deposit here is non-negotiable by its terms, and "transferable only by assignment on the books of the Bank." Notwithstanding cases from other states holding certificates of deposit to be "instruments," Wightman v. American Natl. Bank of Riverton (Wyo. 1980), 610 P. 2d 1001, and cases cited therein at 1004, we believe that this particular certificate of deposit may arguably be more properly classified as a "general intangible," R.C. 1309.01(A)(16), in which a security interest can only be perfected by filing. See Official Comment 1 to R.C. 1309.24. Resolution of this question is unnecessary for our determination of this appeal.

he had an interest, he could only give a security interest to the extent that he had an interest. This interest consisted of a right to withdraw principal and interest during his lifetime.

The loan did not go into default until after Michael's death. It was only upon default that the bank would have been entitled to enforce its security interest in the collateral. R.C. 1309.44(A). However, because Michael had no more than a lifetime interest in the certificate of deposit, the bank's security interest in the certificate of deposit terminated with Michael's death and before the bank had a right to enforce its security interest.

We are not persuaded that R.C. 1309.25(B) dictates a different conclusion:

"Except where sections 1309.01 to 1309.50 of the Revised Code otherwise provide, a security interest continues in collateral notwithstanding sale, exchange, or other disposition thereof unless the disposition was authorized by the secured party in the security agreement or otherwise * * *."

R.C. 1309.25(B) stands for the proposition that the debtor who has given a security interest in collateral cannot defeat the creditor's security interest by transferring the collateral to a third person. R.C. 1309.25(B) contemplates the continued vitality in the transferee of the property interests that the debtor first had in the collateral prior to transfer. But R.C. 1309.25(B) does not intimate that a debtor can give a security interest in collateral that exceeds his own interest in the collateral.

Here, Michael gave the bank a security interest in the certificate of deposit to the extent of his own interest in the certificate of deposit. However, that interest was extinguished upon his death, and the bank's security interest was extinguished with it. When Michael

died, the withdrawal slip he executed during his lifetime became a dead letter.

While we recognize the indifference to title location which is a hallmark of R.C. 1309.01 *et seq.* — see particularly R.C. 1309.13 — we do not ascribe any particular importance to it in resolving the issues here. The issue here is simply whether Michael could give the bank a security interest in collateral that was greater than his own interest. We conclude he could not.

The bank argues that because Michael had the right to withdraw principal and interest during his lifetime, Dora Franke should not be heard to complain because he merely pledged the certificate of deposit. The simple answer to this argument is that this is not what happened. Michael did not withdraw money from the certificate of deposit. He pledged it, and by the time the bank was entitled to enforce its security interest, Michael's interest in the collateral had been extinguished by his death.

The bank cites *Guilds* v. *Monroe Cty. Bank* (1972), 41 Mich. App. 616, 200 N.W. 2d 769, for the proposition that the bank's taking a security interest in the certificate of deposit *during Michael's lifetime* created a security interest in the certificate of deposit that survived his death. *Guilds* relied upon *Hindman* v. *Community Natl. Bank of Pontiac* (1968), 14 Mich. App. 746, 165 N.W. 2d 894.

Both of these cases involved a survivor's claim against a bank for the entire amount remaining in a joint bank account upon the death of the other joint owner. In both cases, the deceased owner had been the sole depositor and the debtor. (In *Hindman,* the deceased owner was co-maker of the obligation.) In each case, the bank attempted to set off against the account the indebtedness remaining at the time of the debtor-owner's death.

In *Guilds,* the bank had taken no ac-

tion during the debtor's lifetime to secure the debt with the bank account. In *Hindman,* the debtor (co-maker) did pledge the joint account as security during her lifetime.

At issue in both cases was a Michigan statute that provided that creation of a joint and survivorship account was *prima facie* evidence of an intent to vest ownership in the survivor.

In *Guilds,* the Michigan Court of Appeals held there was insufficient evidence to rebut the statutory presumption and the surviving owner prevailed. In *Hindman,* the court held the evidence was sufficient to rebut the presumption and the bank prevailed.

We are faced with no such statute here. If we were, we believe our conclusion would be no different. Unlike *Guilds* and *Hindman,* Dora Franke, not the debtor·Michael Franke, was the sole source of the funds represented by the certificate of deposit. Unlike *Guilds* and *Hindman,* Dora Franke, the sole depositor, was not a debtor. From the record, it appears that Dora Franke was not at all involved.

We believe that the trial court properly relied on *Commercial Banking Co.* v. *Spurlock* (1977), 238 Ga. 123, 231 S.E. 2d 748 and *Sherman Cty. Bank* v. *Lonowski* (1980), 205 Neb. 596, 289 N.W. 2d 189.

Both cases involved joint and survivor certificates of deposit owned by spouses. In each case, the court acknowledged that the debtor-husband had given the bank a security interest in the certificate of deposit to secure individual indebtedness. (In *Spurlock,* this is particularly clear from a reading of the intermediate court of appeals' 1976 opinion at 138 Ga. App. 892, 894-899, 227 S.E. 2d 790, 793-795.)

Although each case discusses the bank's right of setoff, each case concludes, implicitly or explicitly, that the bank lost its security interest in the certificate of deposit upon the death of the debtor-husband.

As stated by the Georgia Supreme Court in *Spurlock:*

"The decisive question, then, is whether the security agreement executed by the husband defeated the wife's survivorship interest. We agree with the Court of Appeals that the security agreement encumbered the husband's interest only and his death, prior to the maturity of the note, terminated his interest and extinguished the bank's lien on the certificate of deposit. See *D.A.D., Inc.* v. *Moring,* 218 So. 2d 451 (Fla. App. 1969); *People* v. *Nogarr,* 164 Cal. App. 2d 591, 330 P. 2d 858 (1958); *DeForge* v. *Patrick,* 162 Neb. 568, 76 N.W. 2d 733 (1956); *Hopkins Place Savings Bank* v. *Holzer,* 175 Md. 481, 2 A. 2d 639 (1938). We hold here that the right of survivorship in this joint tenancy account created by contract was not defeated by the husband's individual encumbrance of the account. Consequently, the husband's debt could not be set off against the account because it became vested in its entirety in Mrs. Spurlock, the surviving tenant, upon the death of her husband." 238 Ga. at 125, 231 S.E. 2d at 749.

The assignments of error are overruled and the judgment of the common pleas court will be affirmed.

*Judgment affirmed.*

BROGAN, P.J., concurs.

WILSON, J., dissents.

WILSON, J. dissenting. The bank filed the affidavits of two of its employees in support of its motion for summary judgment. The first affidavit established the following facts: On November 22, 1982, Michael Franke signed a loan application, consumer note and

withdrawal slip. On both the application and note "a notation was made that the note was to be secured by a certificate of deposit."

Photocopies of the loan application form and note were attached to the bank's motion. Both bank forms appear to have been drafted for motor vehicle financing purposes. The "security agreement" portion of the note was left blank. A certificate of deposit number appears on both the note and the loan application which refers to a joint and survivorship certificate in the names of Michael R. Franke or Dora Franke.

The second affidavit established the fact that Michael Franke died on June 27, 1983, and that the note installment due on September 20, 1983 was not paid prior to the setoff by the bank on September 23, 1983.

The plaintiff's motion for summary judgment was supported only by her affidavit which merely established the fact that she purchased the certificate of deposit with her sole funds.

The movant in summary judgment has the burden to show that no genuine issue exists as to all material facts and that the moving party is entitled to judgment as a matter of law. *Harless* v. *Willis Day Warehousing Co.* (1978), 54 Ohio St. 2d 64, 8 O.O. 3d 73, 375 N.E. 2d 46. The trial court is required to overrule a motion for summary judgment unless "reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made," who is "entitled to have the evidence * * * construed most strongly in his favor." Civ. R. 56(C).

Applying this test to the facts established by the affidavits, it is my view that both motions for summary judgment should have been overruled. I would reverse and remand for further proceedings.