IN RE ESTATE OF GULLETT, DECEASED.

(No. 20,472—Decided May 4, 1987.)

Court of Common Pleas of Highland County, Probate Division.

*Carroll V. McKinney,* for exceptors.

*Robert B. McMullen,* for administrator.

DAVIS, J. This cause came on before the court on the exceptions to the inventory filed by Donald L. Lawson and George P. Lawson. Exceptor's objections are to the value of a promissory note and security agreement dated February 24, 1984 given by Charles W. Lawson to Myrle E. Gullett with a lien on a 1970 Valiant Mobile Home, the unpaid balance on date of death listed at $5,081.50 and appraised at $2,000.

In 1983, Myrle Gullett established $6,000 worth of certificates of deposit ("C.D.s") by entering into written contracts with First Security Bank pursuant to R.C. 2131.10, making the same payable on her death ("P.O.D.") to Donald Lawson.

The legislature in R.C. 2131.10 has provided a means for transferring funds to a survivor without compliance with the formalities of the statute of wills. *Eger* v. *Eger* (1974), 39 Ohio App. 2d 14, 68 O.O. 2d 150, 314 N.E. 2d 394; *Tonsic* v. *Holub* (1968), 13 Ohio App. 2d 195, 42 O.O. 2d 341, 235 N.E. 2d 239. The owner during his lifetime retains the right to withdraw the funds in whole or in part as though no beneficiary has been named, and to designate a change in beneficiary. The interest of the beneficiary does not vest until the death of the owner. The C.D.s do not become a part of the decedent's estate, *Eger* v. *Eger, supra.* The fundamental premise of the statute is one based on contract with the bank and not of inheritance. The beneficiary inherits nothing from decedent. He becomes the owner of P.O.D. funds upon the death of the lifetime owner because of the contractual arrangement the lifetime owner had with the bank.

During her lifetime, Myrle Gullett took three additional actions which affected her financial status. On February 24, 1984, she signed a note and security agreement with Charles W. Lawson to 1st Security Bank in the principal sum of $8,078.40, pledging the $6,000 in C.D.s payable to Donald Lawson as security; assigned each C.D. to the bank; and became the payee on a note and security agreement from Charles W. Lawson with a 1970 Valiant Mobile Home as security.

Exceptor claims Myrle Gullett was an accommodation party for Charles W. Lawson on the note to the bank. R.C. 1303.51(A) defines an accommodation party as "one who signs the instrument in any capacity for the purpose of lending his name to another party to it." Exceptor's Exhibit "B" shows that under the signature of each of the makers is the following language: "☐ if checked, the signature below was required as a condition of credit." Neither square is checked. Exceptor's Exhibit "B" also contains a box with the following language: "any person who signs within this enclosure does so to give you a security interest in the property described above, but assumes no personal obligation to pay this note." No signature appears in this box. The implication is clear that Myrle Gullett was personally liable upon said note.

Unless the instrument otherwise specifies, two persons who sign as makers are jointly and severally liable even though the instrument contains the words "I promise to pay," as does Exceptor's Exhibit "B." R.C. 1303.17 (E). If they are joint makers, as among themselves, they are presumed liable in equal amounts. However; if one of the parties pays the note, he may be entitled to contribution to the extent of

the particular terms of the contract between said comakers.

Assuming that Myrle Gullett was an accommodation maker on said note, her liability is subject to the same rules as the liability of any other maker except that an accommodation maker is not liable to the party accommodated. R.C. 1303.51(E). The accommodation maker does have the right to recover from the party accommodated. Specifically, R.C. 1303.51(E) provides that if the accommodation maker pays the instrument he has a right of recourse *on the instrument* against such party. This is a contract right and not a right of inheritance. (Note that an accommodation maker may not have signed gratuitously; he may be a paid surety or receive other consideration from the party accommodated.)

In addition to signing the note as a maker, Myrle Gullett pledged the P.O.D. C.D.s as collateral for the loan and by separate instruments assigned each P.O.D. C.D. to the bank, authorizing the bank to charge against said P.O.D. C.D.s any notes representing the unpaid balance of the loan. The legal effect of this action by Myrle Gullett cannot be understated. She surrendered by contract to the bank all rights to said P.O.D. C.D.s subject to the terms of her loan agreement. That she had a right to do so cannot be questioned. As stated above, the owner of P.O.D. C.D.s during her lifetime retains the right to withdraw the funds and the beneficiary has no vested interest that can prevent such action. Whatever the intended purpose, Myrle Gullett by contractual agreement placed these P.O.D. C.D.s not only beyond the reach of the beneficiary, but also deprived herself of access to them. While pledged as security, she could not cash them for her own use and had the loan become in default during her lifetime, the bank could have satisfied its note by applying the P.O.D. C.D.s to it.

On July 28, 1985, Myrle Gullett died. On December 30, 1985, the bank satisfied its note from the P.O.D. C.D.s and paid the surplus of $1,105.02 to Donald Lawson. The bank had the explicit contractual authority to do so and it properly accounted for the surplus to Donald Lawson. Once the note was satisfied from the pledge and assigned collateral, the bank was required by R.C. 1309.45(B) to account to the debtor for any surplus. R.C. 1309.45(B) provides in part: "* * * If the security agreement secures an indebtedness, the secured party must account to the debtor for any surplus, and unless otherwise agreed, the debtor is liable for any deficiency." The debtor, Myrle Gullett, though, had designated these C.D.s as payable on death to Donald Lawson, so that any net amount realized from said C.D.s was not an asset of the estate, but rightfully vested in Donald Lawson at Myrle Gullett's death.

It is to be emphasized here that what vested in Donald Lawson at Myrle Gullett's death was the surplus only. Myrle Gullett had contracted away, during her lifetime, any and all rights to the P.O.D. C.D.s including her own. Donald Lawson could not have received any more from the P.O.D. C.D.s than Myrle Gullett could have received during her lifetime.

Exceptor urges that since the bank could have elected to collect on the note from either Charles Lawson or decedent's estate, and that because they elected to apply the pledged and assigned P.O.D. C.D.s to the note, he should stand in the shoes of Myrle Gullett and collect the full value of the P.O.D. C.D.s as an heir. He cites 31 Ohio Jurisprudence 3d (1981) 248-250, Section 175. This section reads: "Subject to the rule that title to an intestate's personal property including choses in action passes on his death to the administrator of his estate, rather than to an heir * * *, the heirs may be

said to stand in the shoes of their ancestor, with such rights as he had. * * * They can have no greater estate or interest in property than the decedent had at the time of his death. If an ancestor had no right, title, or interest as to a particular property, those who claim by descent from him have none."

31 Ohio Jurisprudence 3d, *supra,* at 252, Section 179 states:

"Contractual obligations of a decedent which do not terminate at his death are binding on his executors and administrators in their respective capacity."

Exceptor claims that because Charles W. Lawson executed the note to Myrle Gullett, referred to hereinafter as Note No. 2, on the same day he and Myrle Gullett executed the note to the bank, referred to hereinafter as Note No. 1, that Donald Lawson has the right to collect Note No. 2 due Myrle Gullett. Does he claim by inheritance or contract? We have seen that ownership of the P.O.D. C.D.s is not by inheritance. Likewise, Note No. 2 is a chose in action which passes on the death of Myrle Gullett to the administrator of her estate. Unlike real estate which vests in the heirs on death, the personalty, including the right to recover on a note and to pursue the security, passes to the administrator and is subject to the payment of the debt of the estate before distribution to the heirs.

Turning to the contractual rights of the parties, Donald Lawson would have had the right to all of the P.O.D. C.D.s if Myrle Gullett during her lifetime had not already signed away her rights to withdraw the P.O.D. C.D.s and cash them in. When the bank chose to exercise its right to be paid in full from the assigned certificates, Donald Lawson lost his right to them except for the surplus. As to the note from Charles Lawson to Myrle Gullett, Donald had no contractual rights. That note is an asset of the estate. It passed to the administrator who stands in the shoes of the decedent to collect the debt and recover on the security it provided. What the administrator recovers must first be applied to decedent's debts and costs of administration before it may be distributed to the heirs. The administrator is the only person entitled to maintain an action to recover on a chose in action due the estate. A sole heir of a decedent in possession of a promissory note belonging to the deceased has no right of action on such note. *McBride* v. *Vance* (1906), 73 Ohio St. 258. In *Sager* v. *Breisach* (1938), 61 Ohio App. 413, 15 O.O. 266, a distributee tried to bring an action against the maker of a note and was denied relief because the distribution had been made prematurely before creditors claims had been presented. Nothing herein prevents the proper assignment and distribution to an heir by an administrator pursuant to R.C. 2113.55.

In what capacity would Donald Lawson sue Charles W. Lawson on his note to Myrle Gullett? How could he enforce a contract to which he was not privy? At the moment of the death of Myrle Gullett, he was not vested with $6,000 in P.O.D. C.D.s. Myrle Gullett had placed him in a position that he might not receive anything. He did become vested in $1,105.20. The bank's action in exercising its right to be paid from the assigned P.O.D. C.D.s was the exercise of a right that existed upon default at any time during the life of Myrle Gullett, as well as after. The fact that no default occurred until after the death of Myrle Gullett did not change Donald Lawson's rights.

If Myrle Gullett had died without assets and Charles Lawson was bankrupt, and the P.O.D. C.D.s were insufficient to satisfy the indebtedness, would Donald Lawson be liable for any deficiency? (Under R.C. 1309.45[B], the debtor is liable for any deficiency.) Clearly not, because he was not the

debtor. He did not stand in the shoes of the debtor. He was not liable for the debts of Charles W. Lawson or Myrle Gullett just because he was named the beneficiary of P.O.D. C.D.s by Myrle Gullett. The estate of Myrle Gullett is liable for her debts, and her administrator is the party against whom an action would be brought if there were assets against which to recover.

The evidence fails to disclose any consideration for the establishment of the P.O.D. C.D.s by Myrle Gullett for the benefit of Donald Lawson. It must be assumed therefore that they were created in the nature of a gift. The only contractual parties in their creation were Myrle Gullett and the bank. Donald Lawson was not privy to the contract. He was simply the beneficiary of whatever Myrle Gullett left him by virtue of her contract with the bank. His claim that he stands in the shoes of Myrle Gullett is similar to a donee claiming to be able to sue the donor's debtor on the theory of a failed gift.

Exceptor claims that when Myrle Gullett required Charles W. Lawson to sign a note to her on the same date that she signed as an accommodation endorser on his note to the bank that this showed her intention to protect her certificates. It may very well have been, although the testimony of Charles W. Lawson would indicate another purpose for the execution of his note to Myrle Gullett. A possible third interpretation of her intent is that she wanted to protect herself and her assets which evolved into her estate. In any event, what she did was to create an obligation from Charles W. Lawson to herself which became an asset of her estate upon her death. Any claim that such note and its security was being held in constructive trust for the benefit of Donald Lawson has been specifically denied by his counsel.

The court finds that the exceptions to the inventory are not well-taken. There is insufficient evidence to indicate that $2,000 is not the fair market value of the note in issue. This in no way limits the recovery by all lawful means of the full amount of the indebtedness. Although ownership of the note was not raised by the exceptions, counsel agreed that it was an issue to be submitted to the court. The court having applied the reasoning herein, it is determined that the note is an asset of the estate and properly included in the inventory.

*Exceptions denied.*