OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Deborah J. Whitten, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Jamison, Appellant, v. Society National Bank, Appellee, et al.
[Cite as Jamison v. Soc. Natl. Bank (1993),      Ohio St. 3d
.]
Banks and banking -- Bank, upon death of a lifetime owner of a payable on death certificate of deposit which had been pledged as collateral for a loan, may take the proceeds of the certificate of deposit in satisfaction of the debt, with only the surplus going to the beneficiary of the certificate of deposit -- Upon the death of a lifetime owner of a payable-on-death certificate of deposit, the beneficiary's interest vests and, if the owner pledged the certificate as collateral, the beneficiary is entitled to only an encumbered interest in the certificate proceeds -- Nonnegotiable, nontransferable certificate of deposit is an instrument, and possession of the certificate is sufficient to perfect security interest of bank to account which was pledged as collateral -- R.C. 1303.03(C), 1309.01(A)(9) and 1309.24, applied.

1. Where a lifetime owner of a payable-on-death certificate of deposit ("P.O.D. C.D.") signs a demand note and security agreement pledging the certificate to a bank as collateral for a loan, then dies with the loan outstanding, the bank has an immediate right to satisfy the debt from the proceeds of the P.O.D. C.D. without first seeking payment from the decedent's estate, and the beneficiary of the P.O.D. C.D. is entitled only to the surplus. (In re Certificates Issued by Hocking Valley Bank of Athens Co. [1991], 58 Ohio St.3d 172, 569 N.E.2d 484, distinguished.)

2. The lifetime owner of a payable-on-death certificate of deposit ("P.O.D. C.D.") has a complete present interest in the account, and may withdraw its proceeds, change the beneficiary, or pledge the P.O.D. C.D. as collateral for a loan. Upon the owner's death, the beneficiary's interest vests and, if the owner has pledged the P.O.D. C.D. as collateral, the beneficiary is entitled to only an encumbered interest in the P.O.D. C.D. proceeds.

3. A nonnegotiable, nontransferable certificate of deposit is an instrument, and possession of the certificate is

sufficient to perfect the security interest of a bank to which the account was pledged as collateral. (R.C. 1303.03[C], 1309.01[A][9] and 1309.24, applied.)

(No. 91-2251 -- Submitted January 6, 1993 -- Decided May 12, 1993.)

Appeal from the Court of Appeals for Cuyahoga County, No. 58924.

In May 1984, Harold Horton ("decedent") purchased a certificate of deposit ("C.D.") for $6,647.62 from appellee, Society National Bank ("the bank"). Decedent designated the C.D. as payable on death ("P.O.D.") to his beneficiary, Pricy Ann Jamison, appellant.

On February 13, 1985, decedent borrowed $5,000 from the bank, executing a security agreement and promissory note by which he pledged the P.O.D C.D. as collateral for the loan. The note was payable on demand and, in the event of default, empowered the bank to withdraw from the P.O.D. C.D. a sum sufficient to pay amounts due on the note. Decedent directed that the bank pay the $5,000 he had borrowed to Jamison, which the bank did.

On June 27, 1988, decedent died with the loan still outstanding. On August 13, 1988, the required payment of interest on the note was in default. On October 21, 1988, Jamison notified the bank of decedent's death and requested payment of the P.O.D. C.D. proceeds, which the bank refused. On November 2, 1988, the bank applied $5,072.75 of the proceeds of the P.O.D. C.D. in satisfaction of the note and issued a check to Jamison for the remaining amount of $4,318.02.

Jamison filed a complaint alleging that the bank had wrongfully taken funds from the P.O.D. C.D. because, at the instant of decedent' death, her interest in the account vested and she became entitled to the full amount of the P.O.D. C.D. The matter was tried based upon the parties' stipulations, with the trial court concluding that, pursuant to the contractual agreement between decedent and the bank, the bank had the authority to apply the proceeds of the P.O.D. C.D. to decedent's debt.

A majority of the court of appeals affirmed on the basis that, under R.C. 2131.10, decedent had the unrestricted right o use the proceeds of the P.O.D. C.D. as though no beneficiary had been named, and could pledge the amount as collateral for the loan if he wished. The court of appeals determined that, upon decedent's death, the bank could satisfy the loan with funds from the P.O.D. C.D. because Jamison had no interest in the account at the time it was encumbered, her interest vesting only upon decedent's death. The court concluded that, since decedent had encumbered the P.O.D. C.D., decedent could not transfer to Jamison more than what he owned at death, so that the proceeds of the P.O.D. C.D. were only payable to Jamison subject to the bank's security interest. The appellate court additionally found that the P.O.D. C.D. was an instrument rather than a general intangible, exempting the bank from filing a financing statement in order to perfect is security interest in the account.

The cause is now before the court pursuant to the allowance of a motion to certify the record.

Richard R. Huber, for appellant.

Buckley, King & Bluso Co., L.P.A., Rosemary DiSanto and Barbara L. Armstrong; and Laurie N. Harkins, for appellee.

Bowman, J.  The question before this court is whether a bank, upon the death of a lifetime owner of a P.O.D. C.D. which had been pledged as collateral for a loan, may take the proceeds of the P.O.D. C.D. in satisfaction of the debt, with only the surplus going to the beneficiary of the P.O.D. C.D.

Jamison argues that, upon the death of the decedent, the bank's interest was immediately extinguished and the P.O.D. C.D. vested to her.  She maintains that the bank had no right to payment on the loan until decedent was in default, by which the time the P.O.D. C.D. had vested and its proceeds were rightfully her own.  Therefore, Jamison maintains that, under these facts, the bank could not attach the proceeds of the P.O.D. C.D.  We disagree, and, for the reasons that follow, hold that where a lifetime owner of a P.O.D. C.D. signs a demand note and security agreement pledging the certificate to a bank as collateral for a loan, then dies with the loan outstanding, the bank has an immediate right to satisfy the debt from the proceeds of the P.O.D. C.D. without first seeking payment from the decedent's estate, and the beneficiary of the P.O.D. C.D. is entitled only to the surplus.

A P.O.D. C.D. is an estate-planning device which allows disposition of property at death without compliance with the formalities of R.C. Chapter 2107.  Eger v. Eger (1974), 39 Ohio App.2d 14, 68 O.O. 2d 150, 314 N.E.2d 394; Tonsic v. Holub (1968), 13 Ohio App.2d 195, 42 O.O.2d 341, 235 N.E. 2d 239.  A beneficiary of a P.O.D. C.D. has no interest in the proceeds of the P.O.D. C.D. until the death of the owner.  R.C. 2131.10.1

Appellant attempts to analogize the creation of a P.O.D. C.D. to the creation of a joint and survivorship account, and seeks our application of the rule set forth in In re Certificates Issued by Hocking Valley Bank of Athens Co. (1991), 58 Ohio St.3d 172, 569 N.E.2d 484, to the facts herein.

In Hocking Valley, one of two joint tenants of six certificates of deposit individually pledged five of the C.D.s as collateral for a loan which remained unpaid upon his death. When the surviving joint tenant sought the C.D. proceeds, the bank refused, asserting that it had a right to the funds pursuant to the deceased joint tenant's security agreement. This court held that, because the bank had no encumbered the interest of both joint tenants, any interest the bank had in the C.D.s was extinguished upon the death of one joint tenant. In so holding, Hocking Valley expressed applied Franke v. Third Natl. Bank & Trust Co. (1986), 31 Ohio App. 3d 189, 190-191, 31 OBR 416, 418, 509 N.E.2d 955, 957, which had determined that a joint tenant of a certificate of deposit may give a security interest only to the extent that he has an interest in the C.D. and, since a joint tenant has only a joint and survivor interest, he may not encumber the C.D. as if he were sole owner.  Hocking Valley, 58 Ohio St.3d at 174, 569 N.E.2d at 486.

The facts in Hocking Valley and Franke are inapposite to those in the case at bar.  Decedent and Jamison were not joint tenants but, rather, lifetime owner and beneficiary, respectively.  Unlike the joint tenants in hocking Valley and

Franke, a lifetime owner of a payable-on-death certificate of deposit ("P.O.D. C.D.") has a complete present interest in the account, and may withdraw its proceeds, change the beneficiary, or pledge the P.O.D. C.D. as collateral for a loan. Upon the owner's death, the beneficiary's interest vests and, if the owner has pledged the P.O.D. C.D.as collateral,the beneficiary is entitled to only an encumbered interest in the P.O.D. C.D. proceeds.

The interest Jamison received upon decedent's death could be no more than that owned by decedent during his lifetime. In re Estate of Gullett (1987), 36 Ohio Misc.2d 8, 10, 521 N.E.2d 14, 16. It is axiomatic that a beneficiary can have no greater estate than that bestowed by his benefactor. See Gullett; Franke, 31 Ohio App.3d at 191, 31 OBR at 419, 509 N.E.2d 958. Therefore, Jamison could receive only an encumbered interest in the P.O.D. C.D. and, since decedent's estate had failed to make payments on the loan after decedent's death, the bank was entitled to exercise its right of setoff, paying only the surplus amount in the account to Jamison.

Jamison additionally asserts that the loan was not in default until after decedent's death, when the P.O.D. C.D. had already vested in her. The "Collateral Loan Disclosure Statement and Note" executed by decedent to evidence the loan is clearly a demand note. According to this document, decedent agreed to pay the principal of $5,000 "on demand in one payment(s) of $5,000.00 commencing on demand." The distinction between an installment note and a demand note has been noted in Marion Ins. Agency, Inc. v. Fahey Banking Co. (1988), 61 Ohio App.3d 9, 13, 572 N.E.2d 124, 127, in which the court stated that:

"The timely payment of interest was not a condition of these notes to prevent the bank from collecting on them. Unlike an installment loan, where timely payment prevents a bank from finding the loan in default and demanding full payment, a demand note is due from the date of issuance and nothing prevents the bank from receiving payment after such time or taking any action, such as a setoff."

Marion further found that the bank was not required to give notice before setting off deposited funds against the amount owing on a note because, under R.C. 1303.07 and 1303.21(A), no demand or notice of default is required before a bank may take action on a demand note. Id. at 12, 572 N.E. 2d at 126.

Because the note in the case at bar is a demand note, the bank could demand payment at any time and did not first need to institute legal action, or proceed against the estate, before attaching the proceeds of the P.O.D. C.D. Therefore the fact that decedent had died some months before Jamison requested payment of the P.O.D. C.D. proceeds was not relevant to the right of the bank to access the P.O.D. C.D. account in satisfaction of the debt.

Jamison's second proposition law argues that the P.O.D. C.D. is not an instrument but a general intangible and, since the bank never filed a security agreement with the county recorder or the Secretary of State, the bank's security interest was not perfected, the bank was not a secured party and any interest the bank had in the P.O.D. C.D. did not take

priority over Jamison's interest.  For the following reasons, we hold that a nonnegotiable, nontransferable certificate of deposit is an instrument, and possession of the certificate is sufficient to perfect the security interest of a bank to which the account was pledged as collateral.

R.C. 1309.02(A)(1) indicates that R.C. Chapter 1309 is applicable "[t]o any transaction, regardless of its form, which is intended to create a security interest in *** instruments." R.C. 1309.21(A)(1) exempts a security interest in collateral which is in possession of a security party from the general requirement that a financing statement be filed in order to perfect a security interest.  Pursuant to R.C. 1309.24, a security interest in an instrument need not be perfected by filing but may be perfected by the secured party's taking possession of the collateral.  R.C.1309.01(A)(9) defines "instrument" as a:

"***[N]egotiable instrument as defined in section 1303.03 of the Revised Code, *** or any other writing which evidences a right to the payment of money and is not itself a security agreement or lease and is of a type which is in ordinary course of business transferred by delivery with any necessary indorsement or assignment."

In contrast, a "general intangible" is defined in R.C. 1309.01(A)(16) as "any personal property, including things in action other than goods, accounts, chattel paper, documents, instruments, and money."  Comment 6 to UCC 9-106 (R.C. 1309.1[A][15] and [16]) suggests that general intangibles include types of contractual rights and personal property such as "goodwill, literary rights and rights to performance," which are clear distinct from the transaction symbolized by a certificate of deposit.

Jamison argues that, which the P.O.D. C.D. may be a writing evidencing a right to the payment of money, which is itself not a security agreement, the P.O.D. C.D. indicates on its face that it is nonnegotiable and nontransferable.  She contends that only a negotiable certificate of deposit may qualify as an instrument, thus rendering the P.O.D. C.D. in this case a general intangible.  Thus, she claims that because the P.O.D. C.D. is not a negotiable instrument it is not of a type which is transferred by delivery in the ordinary course of business and does not qualify as an instrument.

Under R.C. 1309.01(A)(9), however, the note could be either a negotiable instrument or another writing evidencing a right to payment in money, and still qualify as an instrument under the definition.  Moreover, the absence of negotiability in this instance did not transform the P.O.D. C.D. from an instrument into a general intangible, since R.C. 1303.03(C) states:

"As used in Chapters 1301., 1302., 1304., 1305., 1306., 1307., 1308., and 1309. of the Revised Code, and as the context may require, the [term] *** 'certificate of deposit' *** may refer to instruments which are not negotiable within sections 1303.01 to 1303.78, inclusive, of the Revised Code, as well as to instruments which are so negotiable."

Thus, it was not the P.O.D. C.D.'s negotiability or lack thereof which made it an instrument but, rather, simply that the P.O.D. C.D. constituted "any other writing" which evidenced

a right to the payment of money, which was not a security agreement or lease, and which in the ordinary course of business is transferred by delivery.2  By this analysis, we conclude that the bank was not required to have filed its security interest in the P.O.D. C.D., but that possession of the P.O.D. C.D. alone perfected the bank's security interest. Accord Gen. Elec. Co. v. M&C Mfg. Co. (1984), 283 Ark. 110, 671 S.W.2d 189; Wightman v. Am. Natl. Bank of Riverton (Wyo. 1980), 610 P.2d 1001; Citizens Natl. Bank of Orlando v. Bornstein (Fla. 1979), 374 So.2d 6.  Contra Bank IV Topeka, N.A. v. Topeka Bank & Trust Co. (1991), 15 Kan. App. 341, 807 P.2d 686.

Finally, even if the bank should have filed a security agreement in order to perfect its interest in the P.O.D. C.D., the bank still had a common-law right of setoff, pursuant to the terms of the note, which would have allowed the bank to apply the proceeds of the P.O.D. C.D. against decedent's indebtedness.  See Walter v. Natl. City Bank of Cleveland (1975), 42 Ohio St. 2d 524, 71 O.O.2d 513, 330 N.E.2d 425, paragraph three of the syllabus.

Jamison's propositions of law are overruled, and the judgment of the Cuyahoga Court of Appeals is affirmed.

Judgment affirmed.

Moyer, C.J., A.W. Sweeney, Douglas and Wright, JJ., concur.
F.E. Sweeney, J., concurs in the syllabus and judgment.
Pfeifer, J., concurs in judgment.
Donna Bowman, J., of the Tenth Appellate District, sitting for Resnick, J.


FOOTNOTES:
1    R.C. 2131.10 provides:

"A natural person, adult or minor, referred to in sections 2131.10 and 2131.11 of the Revised Code as the owner, may enter into a written contract with any bank, building and loan or savings and loan association, credit union, or society for savings, authorized to receive money on an investment share certificate, share account, deposit, or stock deposit, and transacting business in this state, whereby the proceeds of the owner's investment share certificate, share account, deposit, or stock deposit may be made payable on the death of the owner to another natural person or to any entity or organization, referred to in such sections as the beneficiary, notwithstanding any provisions to the contrary to Chapter 2107. of the Revised Code.  In creating such accounts, 'payable on death' or 'payable on the death of' may be abbreviated to 'P.O.D.'

"Every contract of an investment share certificate, share account, deposit, or stock deposit authorized by this section shall be deemed to contain a right on the part of the owner during his lifetime both to withdraw the proceeds of such investment share certificate, share account, deposit, or stock deposit, in whole or in part, as though no beneficiary has been named, and to designate a change in beneficiary.  The interest of the beneficiary shall be deemed not to vest until the death of the owner.

"No change in the designation of the beneficiary shall be valid unless executed in the form and manner prescribed by the bank, building and loan or savings and loan association, credit union, or society for savings."

2    Accordingly, we reject the dicta of the Montgomery County Court of Appeals in Franke that nonnegotiable certificate of deposit may properly be categorized as a general intangible, rather than as an instrument.  See Franke, 31 Ohio App. 3d at 190, 31 OBR at 417-418, 509 N.E.2d at 957, fn. 1.  The court in Franke ultimately concluded that the resolution of whether a certificate of deposit was a general intangible or an instrument was not apposite to the disposition of that case.

Pfeifer, J., concurring.  I would give the money to charity. Both parties in this case moved inappropriately.  Neither party deserves to receive the funds which are being contested.

The theory of recovery advanced by Jamison is barely worthy of comment.  The bank had a perfected security interest in the payable-on-death certificate of deposit ("CD"). That security interest does not self-destruct with the death of the account owner.  At death the ownership of the CD automatically changes, but the security interest of the bank remains. Case closed!

When Jamison learned that Society was refusing to pay her the balance of the CD to the extent of Society's security interest in the instrument, she should have filed a claim with the decedent's estate demanding that the administrator immediately pay the outstanding balance of the  underlying debt to Society. Upon repayment of this loan, Society would then have released its security interest in the CD.

Society Bank's conduct in this case would have made Mr. Henry F. Potter blush.  Society should not have seized the deposited balance in the CD without first making a demand upon the decedent's executor for payment of the loan's outstanding balance plus accrued interest.  Clearly the bank held a valid security interest in the CD that was not extinguished by the death of Harold Horton.  The majority argues that the contract between Society and the decedent granted Society the right to precipituously appropriate funds from the CD.  Society's contract is an oxymoron.  It is a demand note without requirement for a demand.  The note in question provides it shall be paid "on demand, after date," referring to the date that the note was executed, February 13, 1985.  In rather lengthy paragraphs typed in minuscule print, the note purports to allow Society the right to setoff, sale, or seizure of the obligor's security without notice or demand.

When Society failed to first demand payment from the decedent's administrator, it directly defeated the decedent's overall estate plan.  The decedent, by contract, directed that Jamison receive the full amount, not the net balance of certificate of deposit number 4700-215651-6 upon his death.  No bank should be permitted to market a payable-on-death account to its customer as a simple estate-planning tool and then, without necessity or just cause, directly undermine a depositor's estate plan after his demise. Regrettably, paragraph one of the majority's syllabus will encourage banks to engage in this unfortunate and unnecessary practice. It is now not legally possible to unwind the decedent's executed estate plan by requiring his estate beneficiaries to pay Society the disputed sum, thereby enabling Jamison to receive the withheld balance of the CD. Fortunately, the

decedant's estate plan has not been entirely subverted by Society's inexplicable conduct. Jamison has at least received $4,318.02 from the decedent's CD. She also received the net proceeds of the $5,000 loan which the decedent negotiated with Society.

Finding equities with neither party, I concur with the majority in result only.