The summaries of the Colorado Court of Appeals published opinions
 constitute no part of the opinion of the division but have been prepared by
 the division for the convenience of the reader. The summaries may not be
 cited or relied upon as they are not the official language of the division.
 Any discrepancy between the language in the summary and in the opinion
 should be resolved in favor of the language in the opinion.

 SUMMARY
 August 20, 2020

 2020COA125

No. 19CA0199, Estate of Treviño — Nonprobate Transfers on
Death — Accounts and Transfers Nontestmentary — Payable on
Death Accounts

 A division of the court of appeals considers to what extent a

decedent’s payable on death account was subject to the authority of

his personal representative, when the decedent had pledged the

account as collateral for a loan. The division holds that the

personal representative had authority over only the funds in the

account necessary to pay the loan in full. As to the amount over

which a personal representative has authority, a personal

representative owes fiduciary duties to the beneficiary of the

account.

 Applying these principles, the division concludes that Gerardo

Treviño’s personal representative violated her fiduciary duties of
good faith and impartiality when she paid a loan solely from funds

in Treviño’s POD account.
COLORADO COURT OF APPEALS 2020COA125

Court of Appeals No. 19CA0199
Fremont County District Court No. 17PR30084
Honorable Stephen A. Groome, Judge

In re the Estate of Gerardo Treviño, deceased.

Esteban Treviño,

Appellant,

v.

Victoria Treviño, in her capacity as Personal Representative,

Appellee.

 ORDER AFFIRMED IN PART, REVERSED IN PART,
 AND CASE REMANDED WITH DIRECTIONS

 Division VII
 Opinion by JUDGE BERGER
 Fox and Lipinsky, JJ., concur

 Announced August 20, 2020

Holder & Associates, PC, Michael D. Holder, J. David Taunton, Colorado
Springs, Colorado, for Petitioner-Appellant

No Appearance for Appellee

Brown & Crona, LLC, Spencer J. Crona, Denver, Colorado, for Amicus Curiae
Colorado Bar Association Amicus Brief Committee
¶1 The principal question in this case is whether and to what

 extent Gerardo “Jerry” Treviño’s payable on death (POD) certificate

 of deposit account (the account) was subject to the authority of his

 personal representative on Jerry’s death. Usually, POD accounts

 automatically pass under Colorado law to the named beneficiary

 and do not become part of the probate estate or subject to the

 authority of the decedent’s personal representative. § 15-15-214,

 C.R.S. 2019.

¶2 Here, however, Jerry pledged the POD account as collateral for

 a loan and, under the terms of the pledge agreement Jerry signed,

 no beneficiary or personal representative had the right to receive

 “any rights in the Collateral in the event of Debtor’s death or

 incapacity until the obligations secured hereby are paid in full.”

 Jerry and his wife, Victoria Treviño, were jointly and severally liable

 on the loan.

¶3 When Jerry died, the amount in the account exceeded the

 amount secured by the pledge agreement. We hold that appellee,

 Victoria Treviño, as personal representative of Jerry’s estate, held

 authority over only those funds in the account necessary to pay the

 loan in full, but held no authority over the remaining funds. As to

 1
 the amount over which she had authority as personal

 representative, she owed statutory duties of good faith and

 impartiality to the beneficiary of the account. She violated these

 duties when she paid the loan solely from funds in the account

 without first paying down the loan from other liquid assets of the

 estate.

¶4 Victoria’s actions harmed the beneficiary of the account

 because she paid an outstanding debt from monies to which the

 beneficiary was legally entitled, rather than using other liquid estate

 assets available for that purpose.

¶5 We thus partially reverse the trial court’s order that Victoria

 did not violate her fiduciary duties, and remand for further

 proceedings consistent with this opinion.

 I. Relevant Facts and Procedural History

¶6 The account Jerry opened was payable on death to his son,

 Esteban “Tony” Treviño, the appellant. Later, Jerry and his wife,

 Victoria, obtained an $80,000 secured loan from Wells Fargo Bank.

 Jerry and Victoria were jointly and severally liable on the loan, for

 which Jerry pledged the account as collateral. Victoria never had

 any rights in the account. The pledge agreement provided “that no

 2
 joint owner, beneficiary, surviving spouse or representative of

 Debtor’s estate gets any rights in [the account] in the event of

 Debtor’s death or incapacity until the obligations secured hereby

 are paid in full.”

¶7 In a separate transaction, Jerry and Victoria sold residential

 real property in Texas on an installment loan basis to a family

 member. Victoria testified that the monthly loan payments from the

 sale of the Texas property were used to pay down the Wells Fargo

 loan before Jerry’s death and that the payments on the real

 property sale were roughly equivalent to the periodic payments due

 to Wells Fargo.

¶8 Jerry’s will designated Victoria as his personal representative,

 and she assumed that role on Jerry’s death. In her capacity as

 personal representative, Victoria, through her attorneys, sent a

 letter to Wells Fargo directing it to use the account to pay the

 $77,212.03 balance on the loan and to distribute the remaining

 $27,246.52 in the account to Tony, as POD beneficiary. The estate

 (and then Victoria, as the residual beneficiary of Jerry’s estate)

 continued to receive monthly payments from the sale of the Texas

 property after Jerry’s death.

 3
¶9 About a year after Jerry’s death, Tony filed a petition asserting

 that Jerry’s will was invalid based on Victoria’s alleged undue

 influence. Later, Tony claimed that Victoria had misused the

 account and breached her fiduciary duties when her lawyer directed

 Wells Fargo to use the account to pay the Wells Fargo loan in full.1

 Tony sought a surcharge judgment of $71,711.81 plus interest.2

¶ 10 In a written order, the trial court rejected Tony’s challenge to

 the will, finding that Tony did not meet his burden of proving undue

 influence. Tony does not appeal this part of the court’s order. The

 trial court also rejected Tony’s claim that Victoria breached her

 fiduciary duties in using the account to pay Jerry’s debt to Wells

 1 Victoria testified at the trial that she never directed Wells Fargo to
 do anything and that the decision to use the account to pay the
 loan was made entirely by Wells Fargo. This contention is
 conclusively disproved by the letter Victoria’s lawyer sent to Wells
 Fargo, which said, “[o]n Ms. Treviño’s behalf, we request that Wells
 Fargo release the funds in the CD account to pay off the personal
 loan in full, and then distribute any remaining funds to [Tony].”
 While Victoria consistently alleged that Wells Fargo acted of its own
 accord in using the account, she never contested the authenticity of
 the letter.
 2 The trial court stated in its order that “[Tony] contends that

 [Victoria] breached her duty by authorizing Wells Fargo to use
 $71,711.81 of the proceeds of [the account] to pay off the personal
 loan rather than using assets of the estate to do so.” But later, the
 court found that the balance due on the loan was $77,212.03. This
 discrepancy does not affect our analysis.

 4
 Fargo. The court found that Victoria acted reasonably in directing

 Wells Fargo to use the account because the estate did not otherwise

 have the ability to pay the loan. Specifically, the court found that

 the gross value of the estate was $69,516.61, with only $2415.61 in

 liquid assets.

¶ 11 The court also noted that there was “a question whether

 Tony’s ‘claim’ against the [personal representative] was timely filed”

 because Tony made the claim several months after the statutory

 expiration for creditor claims against the estate under section 15-

 12-803, C.R.S. 2019. The court did not decide that question

 because it ruled against Tony on the merits.

¶ 12 Tony appeals.3

 II. Analysis

¶ 13 We review the trial court’s legal conclusions de novo but defer

 to the court’s findings of fact when they are supported by the

 record. In re Estate of Owens, 2017 COA 53, ¶ 19. Whether an

 3 Victoria has not entered an appearance in this court. At our
 invitation, the Colorado Bar Association filed an amicus brief in this
 case. We express our appreciation to the Bar Association and to
 the authors of the amicus brief in helping us decide this case.

 5
 asset is part of a decedent’s estate is a question of law that we

 review de novo. Sandstead-Corona v. Sandstead, 2018 CO 26, ¶ 69.

¶ 14 Loan pledge agreements are contracts, see Amos v. Aspen Alps

 123, LLC, 298 P.3d 940, 959 (Colo. App. 2010), aff’d in part and

 rev’d in part, 2012 CO 46, and we review de novo questions of

 contract interpretation. Ad Two, Inc. v. City & Cty. of Denver, 9 P.3d

 373, 376 (Colo. 2001). “[A] court must give effect to the plain and

 ordinary meaning of [a contract’s] terms.” Emenyonu v. State Farm

 Fire & Cas. Co., 885 P.2d 320, 323 (Colo. App. 1994).

 A. Payable on Death Accounts

¶ 15 POD designations are authorized by statute. § 15-15-203(1),

 C.R.S. 2019. Section 15-15-201(8), C.R.S. 2019, defines “POD

 designation,” in pertinent part, as “the designation . . . in an

 account payable on request to one party during the party’s lifetime

 and on the party’s death to one or more beneficiaries . . . .”

¶ 16 A POD account is not ordinarily an asset of the estate or

 subject to probate because, by operation of law, at the instant of the

 account owner’s death, the named beneficiary becomes the owner of

 the account. §§ 15-15-212, -214, C.R.S. 2019; In re Estate of

 Owens, ¶ 11. Thus, ordinarily a personal representative would not

 6
 have authority over a POD account because it never becomes an

 asset of the probate estate.4 Indeed, section 15-15-214 expressly

 provides that POD accounts are nontestamentary and not subject to

 estate administration. See also § 15-15-101(1), C.R.S. 2019

 (defining nonprobate transfers on death).

¶ 17 Tony argues that the account, though encumbered by and

 subject to the terms of the pledge agreement, became his property

 when Jerry died. Thus, he argues that Victoria never had authority

 over the account because it was never part of the estate.

¶ 18 Under the plain language of the pledge agreement, however, no

 beneficiary or personal representative “gets any rights in the

 Collateral . . . until the obligations secured hereby are paid in full.”5

 (Emphasis added.) This leaves the question of who gained authority

 over the account when Jerry died.

 4 In defined circumstances, a nonprobate asset may be used to
 satisfy an estate debt under section 15-15-103(8), C.R.S. 2019, but
 the necessary conditions are not present in this case, and no party
 has claimed that this section applies.
 5 “It is a presumption of law that the parties to a contract bind not

 only themselves but their personal representatives.” Colo. Nat’l
 Bank of Denver v. Friedman, 846 P.2d 159, 170 (Colo. 1993)
 (quoting United States ex rel. Wilhelm v. Chain, 300 U.S. 31, 34
 (1937)).

 7
¶ 19 Neither Colorado case law nor statutes address a personal

 representative’s authority over a POD account that is subject to a

 pledge agreement. Outside Colorado, authority on this topic is

 sparse. In Oklahoma, by statute, a POD beneficiary is entitled to

 the funds in a POD account only “after payment of account

 proceeds to any secured party with a valid security interest in the

 account.” Tinker Fed. Credit Union v. Grant, 391 P.3d 766, 770

 (Okla. Civ. App. 2016) (quoting Okla. Stat. Ann. tit. 6, § 901(B)(2)

 (West 2020)). But the Oklahoma court did not specifically address

 authority over a POD account before satisfaction of the pledge.

¶ 20 Ohio takes a different approach: a beneficiary of a POD

 account “receive[s] only an encumbered interest” in the account

 upon the decedent’s death. Jamison v. Soc’y Nat’l Bank, 611

 N.E.2d 307, 310 (Ohio 1993). The creditor, however, “has an

 immediate right to satisfy the debt from the proceeds of the P.O.D.

 C.D. without first seeking payment from the decedent’s estate, and

 the beneficiary of the P.O.D. C.D. is entitled only to the surplus.”

 Id. at 309; see also In re Estate of Gullett, 521 N.E.2d 14, 15-16

 (Ohio Ct. C.P. 1987).

 8
¶ 21 We do not follow the Ohio approach because it could create a

 situation in which a creditor uses a POD account to satisfy

 obligations that should have been paid from the decedent’s estate.

 At the same time, we see no justification for submitting an entire

 POD account to the authority of a personal representative when

 only a portion of the account is required to cover the amount owed

 under the pledge agreement. And while the pledge agreement in

 this case provided that neither the account’s beneficiary nor the

 representative of the decedent’s estate would have any interest in

 the account until the pledge agreement was satisfied, someone

 must have the authority to decide the extent to which the account

 should be used to cover the pledge agreement.

¶ 22 The personal representative, owing fiduciary duties to the

 named beneficiary (as discussed below) and governed by probate

 law, sits in the best position to do so. Accordingly, we conclude

 that, when a POD account is subject to a pledge agreement, and the

 account holder dies, the account holder’s personal representative

 has authority over the account only as to the amount secured by

 the pledge agreement.

 9
¶ 23 Applying these principles here, Victoria had authority over

 $77,212.03 in the account — the remaining balance of the Wells

 Fargo loan. She had no authority over the remaining $27,246.52 in

 the account. This does not mean that Tony’s rights as POD

 beneficiary were eliminated as to the $77,212.03 under Victoria’s

 authority. Applying the plain language of the pledge agreement,

 when the Wells Fargo loan was paid in full, Tony’s rights as POD

 beneficiary attached and entitled him to the remainder of the

 account.

 B. Duties of the Personal Representative

¶ 24 A personal representative is a fiduciary. § 15-1-802(3)(a)(I),

 C.R.S. 2019. She has “a duty to act reasonably and equitably with

 due regard for [her] obligations and responsibilities toward the

 interests of beneficiaries and creditors, the estate or trust involved,

 and the purposes thereof . . . .” § 15-1-804(1), C.R.S. 2019.

¶ 25 A personal representative must also use her authority “for the

 best interests of successors to the estate” and must observe the

 standards of care applicable to a trustee. § 15-12-703(1), C.R.S.

 2019. The standards of care include the duty of good faith in the

 administration of the estate; the duty of loyalty in favor of the

 10
 interests of the beneficiaries; the duty of impartiality between

 beneficiaries; and the duty of prudence in consideration of the

 purposes, terms, distribution requirements, and other

 circumstances of the estate. §§ 15-5-801 to -804, C.R.S. 2019.

 These duties protect not only beneficiaries and creditors, but also

 other “interested persons.” § 15-10-504(2), C.R.S. 2019. “If a

 court, after a hearing, determines that a breach of fiduciary duty

 has occurred . . . the court may surcharge the fiduciary for any

 damage or loss to the estate, beneficiaries, or interested persons.”

 Id. (emphasis added).

¶ 26 Additionally, “[a] personal representative has a duty to settle

 and distribute the estate . . . as expeditiously and efficiently as is

 consistent with the best interests of the estate,” § 15-12-703(1), and

 “a duty to exercise diligent care in timely disposing of claims

 presented to him or her.” In re Estate of Hall, 936 P.2d 592, 595

 (Colo. App. 1996) (emphasis added), aff’d, 948 P.2d 539 (Colo.

 1997); see also In re Estate of Ongaro, 973 P.2d 660, 662 (Colo.

 App. 1998) (“The purpose of the Colorado Probate Code is to

 promote a speedy and efficient system for settling the estate of the

 11
 decedent and making distributions to his or her successors.”), aff’d,

 998 P.2d 1097 (Colo. 2000).

¶ 27 With record support, the trial court found that “the estate did

 not have the ability to pay off the Wells Fargo loan using estate

 funds.” While it is true that the estate did not have sufficient liquid

 assets to pay the entire loan, the estate was capable of paying part

 of the loan from funds other than those in the POD account

 because the court found (again, with record support) that the estate

 had $2415.61 in unpledged liquid assets.6

¶ 28 As the personal representative of Jerry’s estate, Victoria had a

 duty to exercise her powers in a neutral fashion and in the best

 interests of all intended beneficiaries and interested persons. This

 duty included the recognition of Tony’s unvested interest in the

 portion of the account that was not needed to pay off the Wells

 Fargo loan. § 15-10-504. Victoria’s actions violated this duty. By

 paying the loan from an account in which Tony had an interest,

 Victoria benefited herself — both as the only beneficiary of the rest

 of the estate and as a co-obligor on the loan — to Tony’s detriment.

 6Victoria presented no evidence that these funds were needed to
 pay any other estate obligations.

 12
 To the extent there were liquid funds in the estate to pay the loan,

 this use violated Victoria’s fiduciary duties to Tony.

¶ 29 But apart from Victoria’s failure to use the liquid assets, we

 cannot conclude that Victoria breached her fiduciary duties.

¶ 30 Tony’s argument to the contrary is that the monthly payments

 from the sale of the Texas property should have been used to pay

 the loan. It is undisputed that the estate received monthly

 payments from the sale of that property, and that those payments

 were used to make loan payments while Jerry was alive. Tony

 argues that Victoria should have continued to use this money to

 pay down the loan, thereby preserving his interest in the account.

¶ 31 We reject this argument because using the monthly payments

 would have indefinitely delayed the final settlement of Jerry’s estate

 — including the distribution to Tony of any portion of the account

 — and violated Victoria’s duty to timely resolve the estate’s debts.

 In re Estate of Hall, 936 P.2d at 595. Under these circumstances,

 like the trial court, we cannot conclude that Victoria would have

 acted unreasonably or violated her fiduciary duties had she used

 the account to discharge the Wells Fargo debt after having applied

 the estate’s liquid assets to the debt.

 13
 C. Further Proceedings

¶ 32 If a personal representative breaches a fiduciary duty, she is

 subject to the surcharge provisions in section 15-10-504 and “is

 liable to interested persons for damage or loss resulting from” the

 breach. § 15-12-712, C.R.S. 2019. The surcharge statute states

 that, if a court determines there was a breach of fiduciary duty, “the

 court may surcharge the fiduciary for any damages or loss to the

 estate, beneficiaries, or interested persons. Such damages may

 include compensatory damages, interest, and attorney fees and

 costs.” § 15-10-504(2)(a) (emphasis added).

¶ 33 Because we conclude that Victoria breached her fiduciary

 duties to Tony by not applying the estate’s liquid assets to reduce

 the amount due to Wells Fargo before paying the remaining balance

 of the loan from the funds in the account, we remand to the trial

 court to consider a surcharge judgment in the amount of the liquid

 assets, and, if the court determines that it is appropriate, interest,

 attorney fees, and costs.

¶ 34 But before doing so, the trial court must resolve the question

 of whether Tony’s claim against Victoria was timely. The court

 noted in its order that Tony’s claim “was filed several months after

 14
 the expiration in the notice to creditors,” but the court did not

 resolve the issue. The court should consider whether the creditor

 deadline applies at all, given the fact that Tony is not a creditor of

 the estate, but rather, seeks a surcharge judgment against the

 estate’s personal representative. The court should also consider

 whether the claim was tried by implied consent under C.R.C.P.

 15(b) because nothing in the record indicates that Victoria objected

 on timeliness grounds, and she fully litigated the claim at the

 hearing. And the court should consider whether Victoria waived

 any statute of limitations affirmative defense by not timely raising it

 below.

¶ 35 Finally, we express no opinion on whether Tony has a right to

 contribution under section 13-50-103, C.R.S. 2019, or a common

 law claim of unjust enrichment against Victoria in her personal

 capacity.

 III. Conclusion

¶ 36 The order is affirmed in part and reversed in part. The trial

 court’s judgment that Victoria did not breach her fiduciary duty to

 Tony is reversed to the extent of her nonuse of the liquid assets in

 the estate — $2415.61 — and the case is remanded for the trial

 15
court, subject to its determination regarding the timeliness of

Tony’s claim, to consider a surcharge judgment against Victoria and

in favor of Tony for that amount, plus statutory interest. Also on

remand, if the court enters a surcharge judgment, the court must

determine whether to award attorney fees and costs under

section 15-10-504(2)(a). In all other respects, the order is affirmed,

without prejudice to a claim by Tony in an appropriate action for

contribution under section 13-50-103 or a common law claim of

unjust enrichment.

 JUDGE FOX and JUDGE LIPINSKY concur.

 16