**KENTUCKY UTILITIES
COMPANY, Movant,**

v.

**SOUTH EAST COAL COMPANY and
Citizens Fidelity Bank & Trust
Company, Respondents.**

**No. 91–SC–357–D.**

Supreme Court of Kentucky.

April 23, 1991.

As Modified on Denial of Rehearing
Aug. 25, 1992.

Escum L. Moore, Robert J. Turley, Lexington, Richard F. Newell and D. Brian Rattliff, Ogden, Sturgill & Welch, Louisville, for movant.

Bert. T. Combs, William H. McCann, John R. Rhorer, Jr., and Penny R. Warren, Wyatt, Tarrant & Combs, Lexington, for South East Coal.

James A. Kegley, Greenebaum, Doll & McDonald, Lexington, Hiram Ely, III, and J. Mark Grundy, Greenebaum, Doll & McDonald, Louisville, for Citizens Fidelity.

**OPINION AND ORDER PURSUANT TO CR 76.33 GRANTING INTERMEDIATE RELIEF**

LEIBSON, Justice.

Kentucky Utilities Company ("KU") filed a Motion for Discretionary Review with the Supreme Court on April 15, 1991, accompanied by a Motion for Intermediate Relief pending a ruling on the Motion for Discretionary Review. CR 76.33 authorizes intermediate relief "upon a satisfactory showing that otherwise [the moving party] will suffer immediate and irreparable injury before a hearing may be had on the motion."

By Order entered April 18, 1991, Justice Charles M. Leibson was designated to hear and dispose of the Motion for Intermediate Relief. Commencing at 4:00 p.m. the same day, oral arguments were heard on this motion, with all parties present and given an opportunity to be heard. Before the hearing the movant, KU, had submitted a Memorandum in support of this Motion and both respondents, South East Coal Company ("SECO") and Citizens Fidelity Bank & Trust Company, as agent for Continental Illinois Bank & Trust Company of Chicago, Bank One of Columbus, and Citizens Fidelity Bank & Trust Company (the "bank consortium"), separately filed written Responses to KU's Motion and Memorandum.

The underlying case is a rather complicated Declaration of Rights action decided in Fayette Circuit Court by Judgment entered December 1, 1989. It involves interpretation of a contract entered June 30, 1978, between KU and SECO under terms of which SECO agreed to supply KU's Ghent No. 3 generating unit with "compliance coal" through December 1, 1990. The agreement contained both a "base price" section, Section 4, with automatic "price adjustment provisions," and an entirely separate provision for "triennial reviews," Section 12, to consider "whether the ... Base Price Adjustment Provisions of this Agreement [paragraphs 4.03 through 4.09] are required to be adjusted, on an equitable basis, because of the occurrence, after the effective date of this Agreement, of material unforeseen events or changed conditions."

At the outset of this controversy, KU moved for, and obtained from, the trial court permission to establish a so-called "Rule 67 fund." CR 67.01 provides:

"In an action in which any part of the relief sought is a judgment for a sum of money or the disposition of a sum of money or the disposition of any other thing capable of delivery, a party, upon notice to every other party, and by leave of court, may deposit with the court all or any part of such sum or thing. Money paid into court under this rule shall be deposited in an interest-bearing account or invested in an interest-bearing instrument approved by the court...."

Into this Rule 67 fund KU deposited the price differential between the sums it was being charged for coal on an ongoing basis and the lesser sums KU considered appropriate under its view of the correct price if the contract price was adjusted for unforeseen circumstances as called for by the triennial review section. Ultimately the trial court found for KU on the pricing issue, and in Paragraph 6 of its Declaratory Judgment specified that the sums deposited in the Rule 67 fund "do not constitute a part of the price or prices for coal sold and delivered by the defendant [SECO] to the plaintiff [KU]. As such, the funds are, and always have been, the property of Kentucky Utilities Company." However, recognizing its decision would be appealed, this same paragraph provided, "for the time being, the deposit shall remain intact and subject to further Orders of this Court." The amount in this Rule 67 fund amounted to some $36 million at the time of the trial court's final judgment, and now, with interest, some $40 million.

During the late stages of the litigation in the trial court, the trial court ordered a change to permit KU to retain these sums it had been paying into the Rule 67 account, and at the time of judgment the amount KU had retained amounted to some $28 million. In its final judgment the trial court awarded this $28 million to KU, plus the sums in the Rule 67 fund (now $40 million), and then, in addition, decided that SECO still owed another $12 million to KU in price adjustment. Thus the total price differential assessed by the trial court in favor of KU by its final judgment was some $80 million.

The Court of Appeals has reversed the trial court. In an Opinion final on denial of Petition for Rehearing on April 5, 1991, it held the trial court erred in applying the "unforeseen contingency" price alteration provision, that the decision in this case as to whether there were "material unforeseen events or changed conditions," should turn on application of the Uniform Commercial Code § 2–615 (KRS 355.2–615), and

that under the terms of the Code there were no conditions present in this case which justified changing the amount due under base price provisions. This was a 2/1 decision by the Court of Appeals, with Judge Hayes in dissent stating "age-old principles of contract law—what was the intent of the parties when the contract was entered into in 1978," should control, and that, thus considered, "there was substantial evidence on all issues supporting the trial judge's findings and conclusions."

KU's Motion for Discretionary Review to our Court states there are important questions for us to consider regarding proper interpretation of the Uniform Commercial Code, regarding the propriety of the trial court's use of a Rule 67 fund, and regarding erroneous fact-finding by the Court of Appeals. The question whether this case merits discretionary review has no relevance to the pending CR 76.33 motion except, if the discretionary review motion was patently frivolous, there would be no need to consider intermediate relief. In my view, as a preliminary, threshold determination, the discretionary review motion has sufficient substance to merit intermediate relief until the discretionary review motion is decided, if such relief is otherwise proper.

SECO is in Chapter 11 bankruptcy receivership. The Fayette Circuit Court Order of April 15, 1991, releases the $40 million on deposit in the Rule 67 fund to the U.S. Bankruptcy Court. This is viewed by the respondents, SECO and SECO's creditors, the bank consortium which intervened in this action and laid claim to the sums on deposit in the Rule 67 fund, as nothing more than a modification of a supersedeas arrangement as permitted by CR 73.06. In this April 15, 1991 Order, in addition to releasing the $40 million in the Rule 67 fund to the U.S. Bankruptcy Court, the trial court also modifies other supersedeas arrangements regarding SECO's property now encumbered by first mortgages to the Banks and subject to further claims from other creditors, all presently subject to disposition by the Bankruptcy Court. At the time of the initial appeal of this case, SECO was permitted to pledge this property in lieu of other supersedeas. In the Order of April 15, 1991, releasing the Rule 67 deposit and modifying security, as new security for KU's judgment pending appeal, with the permission of the Bankruptcy Court, the $40 million paid to the Bankruptcy Court is to be used in part to pay off the Bank mortgages and KU is to be substituted as first mortgagee in lieu of the Banks. This is called the "new mortgage and security arrangement." SECO and the Banks maintain that, although SECO is in bankruptcy, this new security arrangement is adequate to protect KU's interest, and that, in any event, our Court should not intervene to prevent delivery of the $40 million deposit to the U.S. Bankruptcy Court unless it is prepared to say the new security arrangement is inadequate and the trial court's decision was an abuse of discretion.

On the other hand, KU maintains our Court should stay the release of the money in the Rule 67 fund for three reasons: (1) the Court of Appeals' Opinion is not final until either discretionary review is denied or our Court affirms it (CR 76.30); (2) there are legal issues of importance not only to the parties, but to the legal system, regarding whether CR 67.01 could be utilized, as it was in this case, and regarding whether and how the Uniform Commercial Code should apply; and (3) unless the *status quo* is maintained by a stay, when the money is delivered to Bankruptcy Court our Kentucky courts will lose any authority thereafter to disburse the funds. KU believes it will be irreparably harmed because the new security arrangement will not protect its final judgment if ultimately affirmed.

SECO and the bank consortium maintain that the Rule 67 Order was nothing more than a pre-judgment attachment which should not have been permitted in the first place. This, of course, is precisely the issue which KU disputes, and which it wishes resolved by discretionary review. The Court of Appeals made no decision regarding whether the trial court acted properly in permitting KU to deposit portions of its payments to SECO in dispute pending a court decision interpreting the contract. The Court of Appeals held it was unneces-

sary to consider this issue once it ruled that the money belonged to SECO.

In my view, the heart of the trial court's Order of April 15, 1991, is contained in this paragraph:

"The [trial] Court is of the opinion, as previously stated, that the likelihood of success by KU has been diminished greatly as a result of the decision of the Court of Appeals which reversed my decision on the primary issue. The Court withheld money under Rule 67 on the likelihood of success to KU and the inability of South East at that time to respond in damages should KU be successful in the distant future. That *likelihood of success has been greatly diminished* and the Court in the intérest of justice now reverses that ruling and releases the Rule 67 deposit of approximately $40 million for disposition by Bankruptcy Court as herein provided." [Emphasis added].

In modifying the security arrangement, no doubt the trial court was also concerned with the financial hardship on SECO resulting from withholding the funds, and no doubt the trial court was hopeful that paying these funds over into the hands of the bankruptcy receiver, and through the receiver to the banks, would greatly improve SECO's chances for survival. Nevertheless, KU points out with alarm that neither the trial court, nor the U.S. Bankruptcy Court which has offered to participate in the new security arrangement after it gets possession of the $40 million, has made a finding, or is prepared to represent, that the new security arrangement will in fact provided adequate security, or any security for the payment of KU's judgment.

In my view the principal thrust of the trial court's April 15, 1991, decision was KU's "likelihood of success has been greatly diminished" by the decision of the Court of Appeals reversing the trial court on the primary issue. Once a motion for discretionary review has been filed, this reason evaporates. Until the motion is ruled on, or if granted, until the final decision of this Court, the "likelihood" of KU's "success" cannot be estimated, nor should it be the subject of speculation. On the contrary, the situation of the parties should be viewed as they stood when the final judgment was entered. Although CR 73.06(2) permits a trial court to modify a supersedeas bond while the case is on appeal, the right to modify is tied to the same considerations as control when setting the bond and providing a stay in the first place; CR 73.04 requires the appellant to provide a "supersedeas bond with good and sufficient surety," and that the "bond shall be in a fixed amount and conditioned for the satisfaction of the judgment in full...." " A trial court lacks authority to fix or to subsequently modify a supersedeas bond simply to assist a losing party in financial distress.

KU makes another argument of equal or greater force. The portion of the final judgment under appeal quoted herein at the outset, from Paragraph 6, states in part that the sums on deposit "are, and always have been, the property of Kentucky Utilities Company." Paragraph 6 seems, at the same time, both to declare the money in the fund as KU's property, and then, by holding up its dispersal, to utilize it as a portion of SECO's supersedeas. The judgment further provides in Paragraph 22 that the court "shall retain jurisdiction of this case for entry of further Orders related to" this Rule 67 fund. In my view the trial court has exceeded its authority to utilize the money to serve as supersedeas once it finally declared the funds are KU's property. The effect of perfecting an appeal is to divest the trial court of jurisdiction to alter or amend its judgment, and, because of the way the judgment is worded, it would appear that the action taken by the trial court was thus precluded.

There are two reasons why this stay of the trial court's April 15, 1991 Order must be granted:

1) There is substantial reason to be concerned that KU will be irreparably harmed by being denied security for payment of the final judgment entered in this case. The primary reason stated for that Order was not a valid consideration.

2) If, as would appear, the final judgment has declared the $40 million in the Rule 67 fund property of KU, the trial court's Order of April 15, 1991, irreparably harms KU by depriving it of its property before there has been any final decision divesting KU of such ownership.

THEREFORE, IT IS THE ORDER OF THIS COURT that the Fayette Circuit Court's Order dated April 15, 1991, releasing the sums on deposit in the Rule 67 fund is stayed. No funds shall be released until final disposition of the Motion for Discretionary Review filed before the Kentucky Supreme Court in the above-styled action unless this Order is sooner terminated by further order of this Court. Further, the effective date for the termination of the within Order shall not occur until it has been superseded by further order of this Court.