655 So.2d 555 (1995)
GROCERY SUPPLY COMPANY, Plaintiff-Appellant,
v.
WINTERTON FOOD STORES, INC., et al., Defendants-Appellees.
No. 27020-CA.
Court of Appeal of Louisiana, Second Circuit.
May 10, 1995.
*556 Weems, Wright, Schimpf, Hayter & Carmouche by Mark W. Odom, Shreveport, for appellant.
Burnett & Frederickson by Gerald L. Burnett & John Frederickson, Shreveport, for appellees.
Before MARVIN and HIGHTOWER, JJ., and GUIDRY, J. Pro Tem.
HIGHTOWER, Judge.
This appeal stems from a judgment recognizing that an intervenor's security interest in a bank account primed an unsecured judgment creditor's seizure of the funds. We affirm.

Background
On December 12, 1991, appellant, Grocery Supply Company ("Grocery Supply"), obtained a judgment in Texas against Winterton Food Stores, Inc. ("Winterton"). After making the foreign decree executory in Louisiana, Grocery Supply seized Winterton's bank account at Premier Bank in Shreveport ("Premier"). Later, Contract Inmate Services ("CIS"), appellee, filed an intervention claiming that, by virtue of a perfected security interest in the deposited funds, it stood superior to the plaintiff.
After an intervention hearing, the district judge found that CIS had a validly perfected security interest and that its status primed that of Grocery Supply, an unsecured judgment creditor. Accordingly, after declaring the intervenor legally entitled to the deposit account funds, the trial court dismissed plaintiff's seizure. This appeal ensued.

Discussion
The issue on appeal is whether CIS has a perfected security interest in the Winterton business account, thus priming Grocery Supply's judgment and subsequent seizure.
At the intervention hearing, CIS presented an "Act of Assignment" dated August 19, 1991, by which Premier transferred and assigned to appellee a $295,000 promissory note executed by Winterton, payable to the order of the bank or bearer, together with the security documents guaranteeing payment. Additionally, CIS introduced "one certain commercial security agreement executed by [Winterton] on January 25, 1990" in favor of the Lender, a term referring to Premier and its assigns.[1] That agreement, in addition to specifically covering "General Equipment" and "General Inventory," contained the following provision:
DEPOSIT ACCOUNTS: As additional collateral security for repayment of the Indebtedness.... Grantor hereby grants Lender a continuing security interest in any and all present or future funds that Grantor may have on deposit with Lender and in certificates of deposit and other deposit accounts to which Grantor is an account holder....
On appeal, plaintiff contends that CIS failed to prove that it properly perfected the claimed security interest.
We are thus called, in an apparent case of first impression, to interpret certain provisions of Chapter 9 of the Louisiana Commercial Laws, LSA-R.S. 10:9-101 et *557 seq., this state's version of Article 9 of the Uniform Commercial Code (UCC).[2] Although the legislative intent for adopting the UCC had been to bring our secured transactions law into general conformity with the other states, Louisiana affixed several non-uniform sections to the otherwise largely standard enactment. One such provision, LSA-R.S. 10:9-305(4), uniquely provides for a security interest in deposit accounts. Concerning accounts maintained or established with a person other than the secured party, the security interest may be perfected by giving notice of the privilege to the depositary. Moreover, and very importantly, the public filing of a financing statement is neither necessary nor effective to validate the security right as to third parties. LSA-R.S. 10:9-302(1)(h), 9-305(4).
By means of the previously mentioned commercial security agreement, Premier first achieved a security interest in Winterton's bank account. Such an interest, in a deposit maintained with the secured party, is automatically perfected upon execution of the security agreement. LSA-R.S. 10:9-305(4). Later, in the assignment to CIS, the bank expressly transferred all its "rights, benefits and privileges" under certain listed collateral documents and guaranties, specifically including the commercial security agreement in question. Thus, in order to maintain a position superior to other creditors, appellee had to give notice to Premier, the third party depositary.
CIS argues, and we agree, that the parties' execution of the assignment effectively gave Premier the requisite notice under LSA-R.S. 10:9-305(4). The bank certainly recognized, or should have recognized, the transferrence of its security rights. As stated, the contract specifically listed the January 1990 commercial security agreement that established the deposit account privilege. CIS's acceptance of the transfer, then, concomitantly notified the financial institution of its continuing depositary role with respect to the security interest. Put otherwise, appellee's actions adequately and reasonably informed the bank in the ordinary course of business. Whether the depositary actually took cognizance of such information is irrelevant. See LSA-R.S. 10:1-201(26), setting forth the standard for determining when a party "notifies" or "gives notice" to another.
In its brief, Grocery Supply wrongly relies upon an insurance cancellation case, Delatte v. Lemotte, 633 So.2d 686 (La.App. 1st Cir. 1993), in contending that CIS should have provided the bank with a separate document giving notice of the security interest. Not only does Delatte concern a statute specifically mandating notification procedures when a premium finance company cancels a policy, but also appellant completely ignores the applicable sections of Chapter 9, which provide a reasonableness standard for evaluating notice. Under the circumstances at hand, a secured party need not execute an additional writing for notification purposes.
Noting that the Legislature established a general rule favoring public recordation, appellant also argues that the present factual situation justifies a judicial interpretation that would require CIS to file a financing statement before its security interest could affect third parties. This suggestion is not impressive. To the contrary, the drafters clearly provided an exception from the need for such registration. See LSA-R.S. 10:9-302(1)(h), 9-305(4). Moreover, when a secured party assigns a perfected security interest, the assignee need not make a filing in order to continue the prior secured status as against creditors of the original debtor. LSA-R.S. 10:9-302(2). Under the present statutory scheme, only the depositary must be notified about the existence of a security agreement which affects a deposit account in its possession. Imposing the requirement suggested by appellant would, in effect, both eliminate the exception and undermine the basic legislative design involved.
In summary, we conclude that CIS properly perfected its security interest in Winterton's business account with Premier. Thus, the district court did not err in dismissing Grocery Supply's seizure, after concluding *558 that the judgment creditor's position had been primed by appellee's asserted interest in the deposit account. Cf. Design Associates, Inc. v. Charpentier, 550 So.2d 956 (La. App. 5th Cir.1989).

Conclusion
For these reasons, the district court judgment is affirmed at appellant's cost.
AFFIRMED.
NOTES
[1] As another demonstration of its superior position, CIS introduced two chattel mortgages executed by Winterton in favor of Premier's predecessor bank in November 1986. Finding the priority issue resolved by the 1990 security agreement and subsequent assignment, we decline to address the validity the earlier instruments.
[2] The indicated provisions, LSA-R.S. 10:9-101 et seq., adopted by Acts 1988, No. 528, apply to secured transactions occurring on or after January 1, 1990. See Acts 1989, First Extraordinary Session, No. 12.