[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 01-14973
_____

D. C. Docket No. 01-00307 CV-J-S

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 05, 2002
THOMAS K. KAHN
CLERK

IN RE:

ALABAMA LAND AND MINERAL CORP.,

Debtor.

NATIONAL CITY BANK OF KENTUCKY,
f.k.a. National City Bank, Kentucky,

Plaintiff-Appellant,

versus

ANDRE M. TOFFEL, Trustee,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Alabama

_____

**(June 5, 2002)**

Before BIRCH, HILL and HALL*, Circuit Judges.

_____

* Honorable Cynthia Holcomb Hall, U.S. Circuit Judge for the Ninth Circuit, sitting by
designation.

BIRCH, Circuit Judge:

National City Bank of Kentucky (NCB) appeals the bankruptcy court's decision, affirmed by the district court, that NCB failed to perfect a security interest in a $1,000,000.00 fund held in escrow for Alabama Land and Minerals Corporation ("Alabama Land") and Mid-South Resources Corporation ("Mid-South"). On cross-motions for summary judgment, the district court characterized the $1,000,000.00 fund ("subject funds") as a certificate of deposit ("CD") and reasoned that NCB's interest was unperfected because NCB did not possess a certificate. The district court granted summary judgment to the bankruptcy estates of Alabama Land and Mid-South, represented by André Toffel ("Trustee"). Whether NCB's interest was perfected turns on how the subject funds are characterized. We conclude that the district court's characterization results in the elevation of form over substance, and REVERSE the grant of summary judgment in favor of the Trustee. Because the subject funds are more properly characterized as a deposit account governed by the common law of the pledge, we conclude that NCB's interest in the subject fund was perfected, and REVERSE the district court's denial of NCB's motion for summary judgment.

## I. BACKGROUND

In late 1995, NCB entered into three agreements with Alabama Land. First, NCB issued an irrevocable standby letter of credit for Alabama Land in favor of Van-American Insurance Company ("Van-American") in the amount of $1,000,000.00. Second, NCB and Alabama Land entered into a "Reimbursement and Security Agreement" in which Alabama Land agreed to reimburse NCB should Van-American draw on the letter of credit.[1] Third, Alabama Land and its parent, Mid-South, applied for an escrow account in which to keep the subject funds unless and until Van-American requested payment under the letter of credit. Under the escrow agreement, Alabama Land and Mid-South had the right to request that NCB invest the subject funds in a CD. Alabama Land and Mid-South deposited the subject funds and requested investment, and NCB created CD # 50313123. It is undisputed that NCB never issued a certificate to represent CD # 50313123.

On 1 June 1998, both Alabama Land and Mid-South filed voluntary Chapter 11 petitions, which were subsequently converted into Chapter 7. On 11 August 2000, Van-American presented a $ 1 million sight draft on the letter of credit. At that point, NCB requested that the Trustee for the bankruptcy estate provide NCB with $1,000,000.00 and the fee for drawing the funds. The Trustee did not do so.

---

[1] In addition to the $1,000,000.00, Alabama Land agreed to pay a $2,500 drawing fee, and interest at prime plus 4%. R1-2, Stip., ¶ 2.

3

NCB paid $1,000,000.00 to Van-American on 21 August 2000 in accordance with the letter of credit, and retained CD # 50313123.[2]

NCB then sought relief from the automatic stay to apply the fund to the pre-petition obligations of Alabama Land and Mid-South. The Bankruptcy Court denied relief to NCB, and granted summary judgment to the Trustee. NCB appealed to the District Court. On cross-motions for summary judgment, the District Court denied NCB's motion and granted the Trustee's motion. NCB appeals.

## II. DISCUSSION

An appellate court reviews de novo the grant of summary judgment by a bankruptcy court. In re Optical Tech., Inc., 246 F.3d 1332, 1334 (11th Cir. 2001). Like the bankruptcy court and the district court, we will apply Kentucky state law. See KRS § 355.9-103(1)(b) (1996) (providing that "perfection . . . of a security interest in collateral [is] governed by the law of the jurisdiction where the collateral is when the last event occurs on which is based the assertion that the security interest is perfected or unperfected"). The Uniform Commercial Code ("UCC")

---

[2] CD # 50313123 is still active at NCB. Because the rate of interest accrual under the Reimbursement and Security Agreement exceeds the rate of interest earned by the CD, Alabama Land and Mid-South owe NCB a sum greater than the amount held by NCB in the CD.

has been adopted in Kentucky. KRS § 355.1-101 (1958). It is relevant that we are applying the version of the UCC in effect at the time of the transactions; we are not applying Revised Article 9, which took effect in Kentucky on 1 July 2001. KRS § 355.9-101 (2001).

Whether we uphold the ruling of the bankruptcy court turns on our characterization of the subject funds. According to the bankruptcy court, the subject funds should be characterized as a CD. Relevant Kentucky law provides that a CD is a negotiable instrument, KRS § 355.3-104(10)(1996), and that the only method of perfecting an interest in such an instrument is possession. KRS § 355.9-304(1)(1996). The bankruptcy court reasoned that because NCB did not possess the instrument, i.e., the certificate, NCB's interest was not perfected.

We acknowledge that multiple characteristics of the subject funds support the bankruptcy court's decision: NCB created an account labeled CD # 50313123, Alabama Land received a receipt for the creation of a CD, the subject fund generated interest and matured periodically. The bankruptcy court's decision, however, is fundamentally flawed in two respects. The first flaw is global: the substance of the transaction was NCB's transfer of credit in consideration for Alabama Land's collateral. The second flaw of the bankruptcy court's decision is

5

technical: the CD was not represented by a negotiable instrument. As such, possession of the certificate was not the appropriate test for perfection.

First we address the substance of the transaction. Kentucky law has long recognized that "[t]he substance instead of the form of a transaction must control in its interpretation and in determining the rights or liabilities of the parties." Ducker v. Latonia Deposit Bank, 46 S.W.2d 493, 494 (Ky. 1932). Reading the three agreements between NCB and Alabama Land, it is clear that the substance of the transaction was the creation of a letter of credit. NCB issued the letter in favor of the Van-American Insurance Company. R1-2, Ex. A. In return, Alabama Land agreed that

> If at any time and from time to time [NCB] require[s] collateral (or additional collateral) security, we agree to deliver, convey, transfer and/or assign to [NCB] as security for our obligations and liabilities hereunder . . . howsoever created, arising or evidenced, whether joint or several, direct or indirect, absolute or contingent, now or hereafter existing, due or to become due (collectively, "Liabilities"), such collateral security as you may request.

R1-2, Ex. B, ¶ 4. The "Letter of Credit Escrow Account Agreement" makes it clear that NCB extended the letter of credit in exchange for collateral: "in consideration of the issuance of the Letter of Credit . . . the parties hereto hereby agree . . . on the date hereof, to pay into the Letter of Credit Account, an amount of

6

cash equal to one hundred percent (100%) of the Letter of Credit amount." R1-2, Ex. C, ¶ C1. Alabama Land and its parent, Mid-South, explicitly granted NCB a security interest: "The Applicant does hereby sell, mortgage and grant a security interest to the Bank in the monies deposited in the Letter of Credit Account ('Security Interest'), such Security Interest perfected by the Bank's possession and control of such monies." Id. at ¶ C4. There is no question that the substance of the transaction was the extension of credit by NCB in consideration for a security interest in the subject funds deposited by Alabama Land.[3]

The Trustee responds by pointing to a provision in the Letter of Credit Escrow Account Agreement: "The Applicant may request that the Bank invest some or all of the cash in the Letter of Credit Account in one or more certificates of deposit issued by the Bank." R1-2, Ex. C, ¶ C3. While it is true that NCB invested the subject funds in a CD in response to Alabama Land's request, this fact does not alter the substance of the transaction between the parties. NCB did not relinquish its security interest in the subject funds by investing them in a CD. Had Alabama Land not requested investment, or if NCB had refused the request, the substance of

---

[3] The agreements between NCB and Alabama Land also provided that in the event of default, "all of [Alabama Land's] Liabilities, direct and indirect, to [NCB] . . shall . . . become immediately due and payable." R1-2, Ex. B, ¶ 5. Default was defined to include a draw by Van-American against NCB under the letter of credit. R1-2, Ex. C, ¶ C5. It is the default provision which NCB seeks to enforce.

7

the agreement between the parties would be the same; the only difference would be that Alabama Land would have earned no interest.

With the global flaw addressed, we turn to the technical flaw in the bankruptcy court's decision: application of UCC Article 9. Because CD # 50313123 was not evidenced by a written certificate — a fact not in dispute — the CD is not governed by Article 9. The issue is definitional. Under the version of Article 9 in effect at the time of these transactions, a CD is defined as "an <u>instrument</u> containing an acknowledgment by a bank that a sum of money has been received by the bank and a promise by the bank to repay the sum of money." KRS § 355.3-104(10)(1996) (emphasis added). An "instrument" is defined as a "negotiable instrument." KRS § 355.3-104(2)(1996). A "negotiable instrument" is defined as

> an unconditional promise or order to pay a fixed amount
> of money . . . if it:
> (a) Is payable to bearer or to order at the time it is issued
> or first comes into possession of a holder;
> (b) Is payable on demand or at a definite time; and
> (c) Does not state any other undertaking or instruction by
> the person promising or ordering payment to do any act
> in addition to the payment of money . . .

KRS § 355.3-104(1)(1996). The only written evidence that the fund had been invested in a CD was a "Confirmation and Advice" statement issued periodically by NCB. R1-2, Ex. D. Because the Confirmation and Advice statement is not

8

payable to bearer or to order, it is not a negotiable instrument. As such, the subject funds cannot be characterized as a CD.

How then should we characterize the subject funds? We find guidance in Revised Article 9. Although not in effect at the time of the transactions at issue, Revised Article 9 provides clarification of former Article 9. See United States v. Carroll, 6 F.3d 735, 746 (11th Cir. 1993) (concluding that it is permissible to use clarifying amendments to interpret an earlier provision of the Sentencing Guidelines). Revised Article 9 provides that "[t]he revised definition [of deposit account] clarifies the proper treatment of nonnegotiable or uncertificated certificates of deposit. Under the definition, an uncertificated certificate of deposit would be a deposit account." UCC § 9-102, comment 12.[4] Because the UCC characterizes "uncertificated certificates of deposit" as deposit accounts, we accept the oxymoron and characterize the subject funds accordingly.

A "deposit account" is a "demand, time, savings, passbook or like account maintained with a bank, savings and loan association, credit union or like organization, other than an account evidenced by a certificate of deposit." KRS § 355.9-105(1)(e)(1986). Under the law in effect at the time of the transactions

---

[4] The use of the Official Comments to interpret the UCC provisions is sanctioned under Kentucky law, provided there is no conflict between the comment and the provision. KRS § 355.1-110 (1990). In this case, there is no conflict.

9

between NCB and Alabama Land, deposit accounts were expressly excluded from the scope of Article 9. KRS § 355.9-104(12)(1986).[5] The fact that the transaction fell outside the scope of Article 9, however, did not preclude the creation of a security interest. In re Ricky Gifford, 174 B.R. 231, 233 (Bankr. W.D. Ky. 1994). Rather, the fact that Article 9 does not govern means that some other state or federal law must. Id.

The law that governs the transaction between NCB and Alabama Land is the common law of the pledge. Long recognized under the common law of Kentucky, a pledge is a transfer of property as security for a debt. Cochran & Fulton v. Ripy, Hardie & Co., 76 Ky. 495 (1877). The law of the pledge was fully developed by the time the UCC was created, and now finds application both within and without the UCC. Kunkel v. Sprague Nat'l Bank, 128 F.3d 636, 644 (8th Cir. 1997). In Kentucky, the use of the pledge as a security device is evident in both statutory and common law. See, e.g., KRS § 132.270 (1968) (reporting taxes on pledged property); KRS § 287.280 (1992) (maximum debt to a bank correlated with the value of the debtor's pledge); Kentucky Util. Co. v. South East Coal Co., 836

---

[5] Under Revised Article 9, commercial deposit accounts fall within the scope of the UCC. 9-109(a)(1) & (d)(13)(2000).

S.W.2d 388, 390 (Ky. 1991); Farmers Bank & Trust Co. v. Brazell, 902 S.W.2d 830, 832 (Ky. Ct. App. 1995).

The Supreme Court has defined the three elements necessary to create a pledge: (1) debt, (2) the offer of property to secure the debt, and (3) the transfer of the property from the debtor (pledgor) to the creditor (pledgee). Mechanics' & Traders' Ins. Co. v. Kiger, 103 U.S. 352, 356 (1880). In the case at bar, all three elements are present. First, Alabama Land incurred debt when NCB extended the letter of credit to Van-American. Second, Alabama Land — through its parent Mid-South — offered the subject funds as security. Third, Mid-South transferred the subject funds to NCB.

Two points warrant discussion. First, it should be emphasized that the debt incurred by Alabama Land and the property pledged by Mid-South are two different entities, both conceptually and physically. Alabama Land's debt was the letter of credit extended by NCB to Van-American; its security was the $1,000,000.00 transferred to NCB. The Letter of Credit Escrow Account Agreement makes this distinction clear: "[t]he letter of Credit obligates the Applicant to deposit $1,000,000 cash into an account at the Bank, as security for the Letter of Credit." R1-2, Ex. C, ¶ B. The conceptual distinction is made more concrete by the physical distinction. When Van-American made a draw on the

11

letter of credit, NCB transferred funds in order to satisfy the obligation.  Still in the possession of NCB is CD # 50313123: the funds pledged by Alabama Land.

The second point warranting discussion is the definition of possession.  "It is the universal rule with reference to pledges of personal property as security for debt that possession, either actual or symbolic, of the thing pledged must be delivered by the pledgor to the pledgee, in order to create the lien."  S.J. Marx Co.'s Trustee v. Marx, 3 S.W.2d 644, 645 (Ky. 1928).  If the pledgor retains control over the thing pledged, the pledgee does not have possession. Title Ins. & Trust Co. v. Louisville Presbyterian Theological Seminary, 109 S.W.2d 814, 815 (Ky. 1937).  The Trustee argues that Alabama Land retained control over the subject funds, so NCB's security interest was not perfected under the common law of the pledge.

The Trustee's argument finds little support in the facts.  Alabama Land's influence over the subject funds was such that it could (1) "request" that NCB place the security in a CD, and (2) establish maturity dates (provided that NCB granted the request to place the fund in a CD).  Alabama Land did not have such control that it could remove the subject funds from NCB, or implement a different investing strategy.  On paper, the Trustee's argument is weaker still.  The Letter of Credit Escrow Account Agreement provides that "[d]uring the term of the Letter of

12

Credit, the Bank shall have absolute and sole control of all monies deposited into the Letter of Credit [Escrow] Account." R1-2, Ex. C, ¶ 7. We conclude that NCB had control over — and thus possession of — the fund pledged by Alabama Land as security for the letter of credit.

### III. CONCLUSION

The uncontested facts in this case support that Alabama Land transferred $1,000,000.00 to NCB as security for a letter of credit extended to Van-American Insurance Company. The subject funds are properly characterized not as a CD, but as a deposit account. Under the common law of the pledge, NCB perfected its security interest in the deposit account. Accordingly, we REVERSE the grant of summary judgment in favor of the Trustee, REVERSE the denial of summary judgment in favor of NCB, and REMAND so that the district court may address costs and any issues related to interest.

**REVERSED AND REMANDED.**