## In re VERUS INVESTMENT MANAGEMENT, LLC, Debtor.

No. 04–26426.

United States Bankruptcy Court, N.D. Ohio, Eastern Division.

June 16, 2006.

---

Jeffrey Baddeley, Cleveland, OH, for Debtor.

Stephen D. Hobt, Cleveland, OH, for trustee.

Renee L. Davis, Thompson Hine, LLP, Cleveland, OH, Louis F. Solimine, Thompson Hine, LLP, Cincinnati, OH, for Duke Realty Limited Partnership.

### *MEMORANDUM OF OPINION*

PAT E. MORGENSTERN–CLARREN, Bankruptcy Judge.

Duke Realty Limited Partnership filed two claims in this case for lease rejection damages, each in the principal amount of $1,897,070.02, and the trustee objected to the claims. The parties now agree that Duke has one claim in the amount of $622,738.20.[1] This opinion addresses the remaining dispute, which is whether Duke holds a perfected secured claim.

### *JURISDICTION*

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered on July 16, 1984 by the United States

---

**1.** The claims are designated as claims no. 4 and 6 on the claims register and the parties agree that claim no. 6 should be disallowed as a duplicate.

District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

### FACTS

The parties submitted this matter for decision on these stipulated facts:[2]

1. In late 2002, a group of individual investors led by David R. Webb formed Verus Investment Management LLC (the "Debtor"), a Delaware limited liability company, to enter the investment advisory and management business.

2. In order to obtain the necessary office space, on or about December 13, 2002 the Debtor entered into a nonresidential real property lease (the "Lease") with Metropolitan Bank and Trust Company ("Metropolitan") with respect to certain commercial premises (the "Leased Premises") on the sixth floor of a building (the "Building") located at 22901 Millcreek Boulevard in the City of Highland Hills, Cuyahoga County, Ohio. A true and complete copy of the Lease is attached as . . . Exhibit A.

3. Under the terms of the Lease, the Debtor agreed to pay Duke[3] base rent in the amount of $476,496 per annum, plus other charges and expenses associated therewith, payable on the first day of each calender month in 12 equal installments of $39,708 each. The Lease provided for a term of five years and two months, and commenced on or about June 16, 2003 as to Phase I of the Leased Premises and on or about September 15, 2003 as to Phase II of the Leased Premises.

4. Pursuant to section 5 of the Lease, the Debtor also agreed, *inter alia,* to provide Metropolitan with a security deposit in the amount of $1,800,000 (the "Security Deposit") "to be held by Landlord in an interest bearing certificate of deposit account or accounts. . . ."

5. On or about May 31, 2003 the Debtor opened at Sky Bank (the successor in interest to Metropolitan) a deposit account (no. 3802085914) (the "Deposit Account") in the name of "Verus Investment Management LLC David R. Webb Thomas J. Bartos" and also purchased a $1.8 million certificate of deposit which Sky Bank held, and continues to hold, in the Deposit Account. A true and complete copy of the initial terms and conditions of the Deposit Account is attached . . . as Exhibit B.

6. Effective as of December 23, 2003 Sky Bank, as successor in interest to Metropolitan, sold the Building to Duke and, in connection with the sale, also assigned its interest in the Lease to Duke pursuant to an Assignment and Assumption of Leases (the "Assignment"). A true and complete copy of the Assignment is attached . . . as Exhibit C.

7. In connection with its assignment of the Lease to Duke, Sky Bank also changed the name of the title owner of the Deposit Account to "Duke Realty Ohio, an Indiana General Partnership, FBO David R. Webb & Thomas J. Bartos, Verus Investment Management LLC." A true and complete copy of the revised terms

---

**2.** Docket 68.

**3.** The court assumes the parties meant Metropolitan, rather than Duke.

and conditions of the Deposit Account is attached ... as Exhibit D.

8. A true and complete copy of a print out of Sky Bank's current computerized account data related to the Deposit Account is attached ... as Exhibit E.

9. To the best current knowledge of Duke and the Trustee, except for the foregoing Exhibits there is no other written documentation evidencing or otherwise relating to the Deposit Account.

10. At the end of December, 2004 the Debtor vacated and abandoned the Leased Premises and on December 31, 2004 it filed its voluntary petition for relief under chapter 7 of the Bankruptcy Code.

11. Duke and the Trustee have agreed that Duke is entitled to lease rejection damages ... in the amount of $622,738.20.

In addition, the court finds that:

12. Paragraph 5 of the Lease (Exhibit A) provides (in relevant part):

*Security Deposit*

[A]s security and collateral for Tenant's performance under this Lease, including without limitation, payment of Rent, Tenant shall ... deposit $1,800,000.00 (the "Lease Security Deposit") with Landlord which will be held by Landlord in an interest bearing certificate of deposit account or accounts, which interest will be payable, and promptly paid, to Tenant as and when received by Landlord. Upon any material default by Tenant under this Lease which is not cured within the applicable notice or cure period, if any, Landlord at its sole option and discretion, may use, apply, or retain all or any portion of said deposit for the payment of any Rent or other charge in default for the payment of any other sum to which Landlord may become obligated by reason of Tenant's default, or to compensate Landlord for any loss or damages which landlord may suffer thereby....

13. The Lease is governed by Ohio law. *See* Lease at § 29 (providing that the Lease is to be governed by the laws of the state where the building project is located).

14. The certificate of deposit held in the Deposit Account is uncertificated.

## *ISSUE*

Does Duke have a perfected security interest in the certificate of deposit which served as a security deposit under the lease or is Duke instead a general unsecured creditor?

## *THE POSITIONS OF THE PARTIES*[4]

Article 9 of the Uniform Commercial Code as adopted in Ohio (the Ohio code) specifies the steps a creditor must take to obtain and perfect an interest in various types of collateral. *See* OHIO REV.CODE, chapter 1309. Duke contends that it has a perfected security interest in the certificate of deposit under this reasoning: the CD is a deposit account as that term is defined by the Ohio code, deposit accounts are perfected by control, and Sky Bank—through control of the deposit account—had a perfected security interest in it to which Duke succeeded. Duke also challenges the debtor's standing to object to its claim.

---

**4.** The parties' arguments (both factual and legal) evolved over the course of the briefing. *See* docket 40, 49, 52, 53, 54, 57, 58, 59, 60, 67, 69, 70. This is a distilled and consolidated version.

The trustee and the debtor respond that Duke is an unsecured creditor, arguing that: (1) Duke's interest in the CD does not come within the scope of the Ohio code at all; and (2) alternatively, if the interest is subject to the Ohio code, the CD is an instrument (rather than a deposit account) and instruments can only be perfected by filing a financing statement or obtaining possession, which Duke did not do. As a further alternative, they argue that (3) even if the CD is a deposit account, Duke still failed to perfect an interest in it because it did not obtain control of the CD. With respect to standing, the debtor contends that: (1) there is a possibility that it will receive surplus assets, which gives it a pecuniary interest; and (2) it is only supporting an objection made by the trustee.

## DISCUSSION

### I. Does the Debtor have Standing to Challenge Duke's Proof of Claim?

 Duke contends that the debtor's arguments should not be considered because the debtor lacks standing to object to its claim. This argument is based on the general rule that the chapter 7 trustee is the appropriate party to object to claims. *See generally* 4 COLLIER ON BANK-RUPTCY ¶ 502.02[2][a] (15th ed. rev.2006). *See also,* 11 U.S.C. §§ 541(a) and 558 (giving the chapter 7 debtor's property rights and defenses to the trustee as the representative of the bankruptcy estate). Duke's argument is misplaced here because the trustee is the objecting party and the debtor is supporting the trustee's objection. *See* docket 40, 52, 59, 68. Consequently, the objection to Duke's claim is being pursued by a party with standing: the trustee. Nothing prohibits the debtor

from assisting the trustee in that endeavor.[5]

 Duke also contends that the debtor's arguments should be ignored because its motives are selfish. In particular, Duke points out, if the CD is not security for Duke's debt, then the unencumbered funds are part of the debtor's estate available for distribution to all creditors. This would benefit the debtor's principal, who is an unsecured creditor. The court can only say in response that, for better or worse, the bankruptcy code does not require a party to have a pure heart before pursuing a legitimate legal position.

### II. Is Duke a Secured Creditor?

 Duke filed its claim as secured and listed the certificate of deposit as its collateral. Duke's proof of claim is prima facie evidence as to the validity of its claim, *see* FED. R. BANKR. P. 3001(f), but Duke bears the ultimate burden of proving its claim by a preponderance of the evidence. *See In re Alternative Publ'ns, Inc.,* 186 B.R. 912, 914 (Bankr.S.D.Ohio 1995).

### A. Does the Lease Create a Security Interest in the CD?

 Duke's position that it has a security interest in the CD is based on paragraph 5 of the lease and Ohio Revised Code Chapter 1309: Secured Transactions. The trustee responds that the lease does not create a security interest in the CD and, therefore, Chapter 1309 does not apply. Instead, the trustee argues, the CD is held as a security deposit under the lease and security deposits create only a debtor/creditor relationship between the parties.

5. For ease of reading, the court will refer to the arguments as being those of the trustee, without differentiating between points made by the trustee and those made by the debtor unless otherwise noted.

■ A security interest is "an interest in personal property or fixtures that secures payment or performance of an obligation." OHIO REV.CODE § 1301.01(KK)(1) (UCC 1–201). Chapter 1309 applies to "[a] transaction regardless of its form, that creates a security interest in personal property or fixtures by contract[.]" OHIO REV. CODE § 1309.109(A)(1) (UCC 9–109). A certificate of deposit is personal property for these purposes. *See, for example, Jamison v. Society Nat'l Bank*, 66 Ohio St.3d 201, 611 N.E.2d 307 (1993) (noting that a certificate of deposit may serve as collateral in a secured transaction).

■ Parties are not required to use a special form when creating a security interest. Instead, "[a] security interest will be found to have been created where there is a *written document* which sufficiently evidences the parties' intent to create a security interest." *Silver Creek Supply v. Powell*, 36 Ohio App.3d 140, 521 N.E.2d 828, 832 (1987) (emphasis in original). The relevant written document here is the lease and the language used in it shows that the parties intended to create a security interest with respect to the CD. Specifically, the lease (1) gives the landlord an interest in the CD to secure the tenant's performance under the lease; and (2) describes the CD as security and collateral for that performance. The parties clearly intended property to secure the tenant's obligations, thus creating a security interest in that property.

The trustee's argument to the contrary is based solely on Ohio case law developed in the context of class action challenges to consumer automobile leases. Specifically, the cases consider whether security deposits given in connection with such leases are collateral subject to the provisions of Chapter 1309. The concern was that if a deposit was deemed to be collateral, the lessor might be required to pay interest on the deposit to the lessee. *See Knight v. Ford Motor Credit Co.*, 135 Ohio App.3d 732, 735 N.E.2d 513, 517 (2000) and *Dolan v. Gen. Motors Acceptance Corp.*, 137 Ohio App.3d 668, 739 N.E.2d 848, 850 (2000). The courts held that the security deposit creates a debt between the lessee and the lessor and "does not create a security interest, i.e., a 'pledge,' because a conclusion to the contrary derogates the common-law principle that a security deposit creates only a debt." *Dolan*, 739 N.E.2d at 850.

These cases do not control because they address security deposits in a totally different fact pattern; that is, consumer automobile leases rather than a commercial real estate lease entered into by two sophisticated parties. The more relevant Ohio case law is that dealing with the legal nature of a security deposit made under a real estate lease. Those cases refer to the deposit as a pledge to secure performance under a lease, rather than as a debt. *See Castlebrook Ltd. v. Dayton Properties Ltd. P'ship*, 78 Ohio App.3d 340, 604 N.E.2d 808, 813 (1992) ("In Ohio, security deposits are . . . a personal obligation in the nature of a pledge between the landlord and the tenant."); *Tuteur v. P & F Enters., Inc.*, 21 Ohio App.2d 122, 255 N.E.2d 284 (1970). *See also, In re Morrison–Barnhart Motors, Inc.*, 142 F.Supp. 845, 846 (N.D.Ohio 1956) ("The landlord held the bankrupt's [security deposit] as trustee or pledgee to secure the performance of the provisions of the lease."). There is also case authority providing that a tenant under a real estate lease owns his security deposit, which again weighs against the proposition that such a lease creates a debtor-creditor relationship rather than a secured relationship. *See Dovi Interests, Ltd. v. Somerset Point Ltd. P'ship*, 2004 WL 254211 (Ohio Ct.App.2004) (unreported decision).

■ The trustee does not cite any Ohio decision holding that parties to a commer-

cial real estate lease are prohibited from agreeing to create a security interest in the form of a security deposit and the court sees no reason to impose that limitation judicially. Under Ohio law, therefore, a landlord and tenant may agree that the tenant's obligations under a commercial real estate lease are to be secured by a security deposit. Based on article 5 of the lease and the above discussion of Ohio law, the court concludes that the lease at issue here gives the landlord a security interest in the CD. In other words, the CD is the landlord's collateral for the tenant's performance under the lease. *See* OHIO REV. CODE § 1309.102(A)(12) (UCC 9–102).

## B. What Type of Collateral is the CD: A Deposit Account or an Instrument?

■ The next issue is how the collateral should be characterized under chapter 1309. Duke argues that the CD is a deposit account and the trustee claims that it is an instrument. This characterization is significant because different rules govern the enforceability and perfection of a security interest in deposit accounts and instruments. The general rule is that a financing statement must be filed to perfect all security interests. OHIO REV.CODE § 1309.310(A) (UCC 9–310). A security interest in a deposit account, however, may only be perfected by control. OHIO REV. CODE §§ 1309.310(B)(8) (UCC 9–310); 1309.312(B)(1) (UCC 9–312); 1309.314(A) (UCC 9–314).

As defined by the Ohio code, a deposit account:

> means a demand, time, savings, passbook, or similar account maintained with a bank but does not include investment property or accounts evidenced by an instrument.

OHIO REV.CODE § 1309.102(A)(29) (UCC 9–102). A certificate of deposit is an account maintained at a bank. It is, therefore, a deposit account unless it is evidenced by an instrument. The term instrument:

> means a negotiable instrument or any other writing that evidences a right to the payment of a monetary obligation, is not itself a security agreement or lease, and is of a type that in [the] ordinary course of business is transferred by delivery with any necessary indorsement or assignment.

OHIO REV.CODE § 1309.102(A)(47)(a) (UCC 9–102). The relevant question here is whether the writings that evidence the CD (*i.e.,* the two deposit account forms) are "of a type that in the ordinary course of business [are] transferred by delivery or with any necessary endorsement or assignment." *Id.*

The terms of the CD state that it is a deposit account and the forms evidencing the account state that it is a deposit account. The agreements prohibit the debtor from transferring or assigning the account without the bank's written consent and only permit the debtor to withdraw or transfer funds from the account using forms approved by the bank. *See* Exhs. B and D. Based on this evidence-and there is none else-the CD is not of a type which the debtor could transfer in the ordinary course of business by simply endorsing or assigning the certificate of deposit. *Cf. McFarland v. Brier,* 850 A.2d 965, 977 (Rhode Island 2004) (considering whether a certificated CD was a general intangible or an instrument, and discussing the types of writings that are transferred in the ordinary course of business by delivery with the requisite endorsement or assignment). Since the CD is not evidenced by an instrument, it stays within the definition of a deposit account.

The trustee argues that Ohio case law is to the contrary, characterizing a certificate of deposit as an instrument in *Jamison v.*

*Society Nat'l Bank,* 66 Ohio St.3d 201, 611 N.E.2d 307 (1993). Although the *Jamison* court concluded that the CD at issue was an instrument, that decision does not control here for two reasons: (1) the CD appears to have been certificated, or evidenced by a written certificate, which in the ordinary course of business is transferred by delivery; and (2) *Jamison* was decided under an earlier version of the Ohio code which excluded deposit accounts from its scope and defined the term "deposit account" to exclude accounts represented by CDs. *See* OHIO REV. CODE ANN. §§ 1309.01(A)(5) and 1309.04(K) (LexisNexis 1996). As a result, the discussion was limited to whether the CD was an instrument or a general intangible, rather than the current issue of whether an uncertificated CD is an instrument or a deposit account. *See National City Bank of Kentucky v. Toffel (In re Alabama Land and Mineral Corp.),* 292 F.3d 1319, 1324–25 (11th Cir.2002) (discussing how revised article 9 clarifies the proper treatment of uncertificated certificates of deposit as deposit accounts).

## C. Did SkyBank have an Enforceable, Perfected Security Interest in the CD as a Deposit Account?[6]

 Ohio Revised Code § 1309.203 establishes the requirements for the attachment and enforceability of a security interest. *See* OHIO REV. CODE § 1309.203 (UCC 9–203). Under that section, a security interest attaches to collateral when "it becomes enforceable against the debtor with respect to the collateral[.]" OHIO REV. CODE § 1309.203(A) (UCC 9–203). For purposes of this decision, the security interest in the CD (a deposit account) is enforceable against the debtor if: (1) value has been given; (2) the debtor has rights in the collateral; and (3) the secured party has control of the deposit account under § 1309.104. *See* OHIO REV.CODE §§ 1309.203(B)(1), (2), and (3)(d) (UCC 9–203).

A secured party has control of a deposit account under § 1309.104 if:

(A) * * *

(1) The secured party is the bank with which the deposit account is maintained;

(2) The debtor, secured party, and bank have agreed in an authenticated record that the bank will comply with instructions originated by the secured party directing disposition of the funds in the deposit account without further consent by the debtor; or

(3) The secured party becomes the bank's customer with respect to the deposit account.

OHIO REV.CODE § 1309.104 (UCC 9–104). SkyBank, as both the secured party and the bank at which the account is maintained, had control over the CD and thus had an enforceable security interest in it. A security interest in a deposit account is perfected by control. *See* OHIO REV.CODE §§ 1309.310(B)(8) (UCC 9–310); 1309.312(B)(1) (UCC 9–312); 1309.314(A) (UCC 9–314). As a result of controlling the deposit account, therefore, SkyBank had a security interest enforceable against

---

**6.** The bankruptcy rules provide that proceedings to determine the validity of a lien should be brought by complaint. *See* FED. R. BANKR.P. 7001(2) and 7003. To the extent the trustee's objection can be viewed as requesting this relief, Duke has waived its right to have the issue presented in the form of an adversary proceeding. *See Global Comm. Fin. L.L.C. v. Old Kent Bank (In re U.S. Kids, Inc.),* 178 F.3d 1297, 1999 WL 196509 at *4 (6th Cir.1999) (unpublished opinion); *In re Felker,* 181 B.R. 1017, 1020 (Bankr.M.D.Ga. 1995).

the debtor and perfected as against third parties.[7]

### D. Does Duke, as SkyBank's Assignee, Have a Perfected Security Interest in the CD?

 While the trustee does not dispute that SkyBank had a perfected security interest in the CD, he denies that Duke enjoys that status. Instead, the trustee argues, Duke does not control the CD and, therefore, does not have a perfected security interest. Duke contends that it does not need to prove control (although it could if it had to) because SkyBank's security interest passed to it intact through the assignment. Neither party cited any Ohio cases governing the effect of the assignment and it appears to be one of first impression.

SkyBank unquestionably had a perfected security interest in the CD. The assignment from Sky Bank to Duke states that Sky Bank "assigns, transfers and conveys to [Duke] all of [SkyBank's] rights, title, and interest in, to and under the Leases;"[8] this included the security interest in the CD. Ohio Revised Code § 1309.310(C) provides that:

> [if] a secured party assigns a perfected security interest or agricultural lien, a filing under this chapter is not required to continue the perfected status of the security interest against creditors of and transferees from the original debtor.

OHIO REV.CODE § 1309.310(C) (UCC 9–310). Duke's argument based on this statute that it stands in SkyBank's perfected shoes after the assignment is sound and is not challenged by the trustee. The statute applies to deposit accounts even though control is required to perfect such collateral, *see* Official Comment 4 to UCC 9–310,

and as one commentator noted, it allows an assignee of a security interest to " 'piggyback' on the original secured party's perfection[ ]," Margit Livingston, *Survey of Cases Decided Under Revised Article 9: There's Not Much New Under the Sun,* 2 DePaul Bus. & Com. L.J. 47, 54 (2003). The consequence is that:

> [a] perfected security interest ... which has been assigned does not have to be re-perfected to continue the perfected status of the security interest ... as against creditors of and transferees from the original debtor. The assignee is placed in the position of the assignor as regards those creditors and transferees.... The continuation of perfection as against creditors of and transferees from the debtor applies no matter how the security interest has been perfected.

11 Larry Lawrence, *Anderson on the Uniform Commercial Code* § 9–310(rev) (3d ed.2005).

A Louisiana court of appeals considered a similar situation in *Grocery Supply Co. v. Winterton Food Stores, Inc.,* 655 So.2d 555 (La.Ct.App.1995). There, the bank loaned money to the debtor secured, in part, by a security interest in a deposit account held at the bank. The bank assigned the note and the security interest to a company called CSI, which apparently left the deposit account at the bank. Another company, Grocery Supply, obtained a judgment against the debtor and garnished the deposit account to collect the judgment. CSI intervened, arguing that it held a perfected security interest in the deposit account by virtue of the assignment and without making a filing.

The court first addressed Louisiana's non-uniform provision requiring an assignee to give notice of the assignment to the

---

**7.** The debtor concedes this point, *see* docket 54 at page 1, and the trustee does not contest it.

**8.** *See* stipulation 6.

depository bank. After finding that provision satisfied, the court considered the argument that CSI, as the assignee, still had to file a financing statement before its interest could take priority over other creditors. The court rejected that argument, relying on Louisiana's version of UCC 9–310 which was not materially different than Ohio's current version. The court found in favor of the assignee CSI, holding that "when a secured party assigns a perfected security interest [in a deposit account], the assignee need not make a filing in order to continue the prior secured status as against creditors of the original debtor." *Id.* at 557. *See also, Bank of New York, Trustee v. Leake (In re Wuerzberger)*, 284 B.R. 814, 822 (Bankr. W.D.Va.2002) (analogizing to UCC 9–310 in holding that assignee of a perfected security interest in a mobile home held perfected interest by virtue of the assignment without noting the lien on the certificate of title).

In this case, SkyBank perfected its security interest in the CD and Duke holds its security interest in the CD by assignment from SkyBank. Under § 1309.310(C), therefore, Duke's security interest is perfected here as against the debtor's creditors and transferees without additional filing.[9]

### CONCLUSION

For the reasons stated, the chapter 7 trustee's remaining objection to claim no. 4 filed by Duke Realty Limited Partnership is overruled and claim no. 4 is allowed as a secured claim in the amount of $622,738.20.

A separate order will be entered reflecting this decision.

---

**9.** Duke also argues that it perfected its interest by independently obtaining control of the CD after the assignment. Given this holding, the court does not need to resolve that issue.